■ ANESTHESIA ASSOCIATES OF MOUNT KISCO, LLP, et al., Appellants-Respondents, v NORTHERN WESTCHESTER HOSPITAL CENTER et al., Respondents-Appellants. [873 NYS2d 679]—

474

In an action, inter alia, to recover damages for breach of contract, (1) the plaintiffs appeal, as limited by their notice of appeal and brief, from so much of an order of the Supreme Court, Westchester County (Donovan, J.), entered March 8, 2007, as granted those branches of the motion of the defendants Northern Westchester Hospital Center, Joel Seligman, and Michael Finkelstein which were for summary judgment dismissing the fifth, eighth, and fourteenth causes of action insofar as asserted against them, and granted those branches of the motion of the defendants Northern Westchester Anesthesia Services and David Miller which were for summary judgment dismissing stated portions of the ninth cause of action and the fourteenth cause of action insofar as asserted against them, (2) the defendants Northern Westchester Hospital Center, Joel Seligman, and Michael Finkelstein cross-appeal, as limited by their notice of cross appeal and brief, from so much of the same order as denied those branches of their motion which were for sum-

mary judgment dismissing the first and second causes of action alleging breach of contract and breach of the implied covenant of good faith and fair dealing, respectively, and (3) the defendants Northern Westchester Anesthesia Services and David Miller separately cross-appeal from so much of the same order as denied those branches of their motion which were for summary judgment dismissing the twelfth cause of action and so much of the ninth cause of action as alleged unfair competition based on the wrongful diversion of business from the plaintiffs to Northern Westchester Anesthesia Services.

Ordered that the order is modified, on the law, by deleting the provisions thereof granting those branches of the motion of the defendants Northern Westchester Hospital Center, Joel Seligman, and Michael Finkelstein which were for summary judgment dismissing so much of the fifth cause of action as alleged tortious interference with the plaintiffs' contractual relationship with Dr. Andrew Duffy, and so much of the eighth cause of action as alleged unfair competition based on a theory of conspiracy to improperly divert business, and substituting therefor provisions denying those branches of the motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

This action was commenced by Anesthesia Associates of Mount Kisco, LLP (hereinafter AAMK), and its individual partners against the defendants Northern Westchester Hospital Center (hereinafter the Hospital), Joel Seligman, the Hospital's president and CEO, Michael Finkelstein, the Hospital's senior vice president for medical affairs (hereinafter collectively the Hospital defendants), and the defendants Northern Westchester Anesthesia Services (hereinafter NWAS), a competing anesthesiology group, and David Miller, a member of NWAS and the chief of anesthesiology at the Hospital (hereinafter together the NWAS defendants). The plaintiffs seek damages based on the defendants' alleged breach of contract, tortious interference with the plaintiffs' practice and business relations, unfair competition, and other related claims.

The Supreme Court properly granted that branch of the Hospital defendants' motion which was for summary judgment dismissing so much of the fifth cause of action as alleged tortious interference with AAMK's contractual relationship with Dr. Robert Rauch and Dr. James Sonn, two anesthesiologists who were interested in joining AAMK. However, the Supreme Court should have denied that branch of the motion which was for summary judgment dismissing so much of the fifth cause of action as alleged tortious interference with AAMK's contractual

relationship with Dr. Andrew Duffy. "The elements of tortious interference with contractual relations are (1) the existence of a contract between the plaintiff and a third party, (2) the defendant's knowledge of the contract, (3) the defendant's intentional inducement of the third party to breach or otherwise render performance impossible, and (4) damages to the plaintiff" (*Bayside Carting v Chic Cleaners*, 240 AD2d 687, 688 [1997]; *see Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 94 [1993]; *M.J. & K. Co. v Matthew Bender & Co.*, 220 AD2d 488, 490 [1995]). The Court of Appeals has recognized that "inducing breach of a binding agreement and interfering with a nonbinding 'economic relation' can both be torts, but that the elements of the two torts are not the same" (*Carvel Corp. v Noonan*, 3 NY3d 182, 189 [2004]). "[T]he degree of protection available to a plaintiff for a [defendant's] tortious interference with contract is defined by the nature of the plaintiff's enforceable legal rights. Thus, where there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior . . . Where there has been no breach of an existing contract, but only interference with prospective contract rights, however, plaintiff must show more culpable conduct on the part of the defendant" (*NBT Bancorp v Fleet/ Norstar Fin. Group*, 87 NY2d 614, 621 [1996] [citations omitted]; *see Carvel Corp. v Noonan*, 3 NY3d at 190; *Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183, 193-194 [1980]).

As a member of AAMK, Duffy had an existing contract with the plaintiffs. In opposition to the Hospital defendants' motion for summary judgment, the plaintiffs submitted, inter alia, an affidavit of Douglas Kornreich, a member of AAMK, stating, among other things, that Duffy breached his partnership agreement and fiduciary obligations to his partners in AAMK by entering into a secret agreement with Joel Seligman, whereby he would receive a supplemental salary of $50,000 per year, plus indemnification from the Hospital for any claims, liability, etc., arising out of his negotiations and service as chief of the department or "alleged violation of the partnership agreement" between him and AAMK. Attached to Kornreich's affidavit was a copy of the indemnification agreement between Duffy and the Hospital, dated February 11, 2002, pursuant to which the Hospital agreed to indemnify Duffy for "any and all claims, demands, actions, loss, liability, costs or expenses . . . arising out of or in connection with your negotiations to become and your service as Chief of the Department." Indemnification

would not apply "to allegations of acts or omissions arising out of or in connection with . . . your alleged violation of any agreements," *except for* "alleged violations of the partnership agreement between you and Anesthesia Associates of Mt. Kisco with respect to your negotiations to become or service as Chief of the Department." In reply, the Hospital defendants submitted Duffy's affirmation, in which he stated that the reason he resigned from AAMK in September 2002 was because he would not agree to sign AAMK's new partnership agreement containing a certain restrictive covenant.

Kornstein's affidavit and the evidence of the February 11, 2002 indemnification agreement raised a triable issue of fact as to whether the Hospital defendants intentionally induced Duffy to leave AAMK. Duffy's statements in his affirmation did not establish as a matter of law that the Hospital defendants did not induce him to leave AAMK. Rather, they merely presented a credibility issue to be resolved by the factfinder in light of Kornstein's affidavit and the evidence of the indemnification agreement (*see Computer Strategies v Commodore Bus. Machs.*, 105 AD2d 167, 175 [1984]). Accordingly, the Supreme Court erred in granting that branch of the Hospital defendant's motion which was for summary judgment dismissing so much of the fifth cause of action as alleged tortious interference with AAMK's contractual relationship with Duffy.

With regard to the Hospital defendants' alleged tortious interference with AAMK's contractual relationship with Rauch and Sonn, two anesthesiologists who were only considering joining AAMK, the plaintiffs were required to show "that the defendant's interference with its prospective business relations was accomplished by wrongful means or that the defendant acted for the sole purpose of harming the plaintiff" (*Caprer v Nussbaum*, 36 AD3d 176, 204 [2006] [internal quotation marks and citation omitted]; *see Carvel Corp. v Noonan*, 3 NY3d at 190-191). " 'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure" (*Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d at 191). If a defendant shows that the interference is intended, at least in part, to advance its own interests, then it was not acting solely to harm the plaintiff (*see Carvel Corp. v Noonan*, 3 NY3d at 190; *Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d at 191; *Newport Serv. & Leasing, Inc. v Meadowbrook Distrib. Corp.*, 18 AD3d 454, 455 [2005]).

The plaintiffs alleged that the Hospital defendants interfered with their prospective business relations with Rauch and Sonn

by refusing to process their applications for medical staff privileges at the Hospital, making it impossible for these doctors to join AAMK. Since they did not allege illegal or improper acts, the plaintiffs had to show that the Hospital defendants acted for the sole purpose of harming the plaintiffs.

The Hospital defendants established their prima facie entitlement to judgment as a matter of law by submitting an affidavit of Joel Seligman, in which he explained that the doctors' applications were not processed because a general hiring freeze was imposed during the search for a new chief of anesthesiology so that the new chief could have input in the selection of new anesthesiologists. Thus, the Hospital defendants demonstrated that their failure to process the applications was, at least partially, due to the hiring freeze imposed to further their own interests, and not solely to harm the plaintiffs.

In opposition to the motion, the plaintiffs failed to raise a triable issue of fact as to Seligman's statements. The plaintiffs' repeated allegations, without any evidence, that the Hospital defendants acted solely out of malice are merely speculation and insufficient to defeat the motion for summary judgment on this issue (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

Contrary to the NWAS defendants' contention, the Supreme Court properly denied that branch of their motion which was for summary judgment dismissing so much of the ninth cause of action as alleged unfair competition based on the wrongful diversion of business from the plaintiffs to NWAS (*see LoPresti v Massachusetts Mut. Life Ins. Co.*, 30 AD3d 474, 476 [2006]; *Beverage Mktg. USA, Inc. v South Beach Beverage Co., Inc.*, 20 AD3d 439, 440 [2005]; *McRoberts Protective Agency v Lansdell Protective Agency*, 61 AD2d 652, 654 [1978]). In opposition to the NWAS defendants' submissions establishing their prima facie entitlement to judgment as a matter of law, the plaintiffs submitted extensive evidence raising triable issues of fact as to whether, by diverting to NWAS members cases that should have been assigned to AAMK members, the NWAS defendants deprived the plaintiffs of the business to which they had a right pursuant to the Hospital bylaws, and that they did it purposely and in bad faith.

Contrary to the plaintiffs' contention, the Supreme Court properly granted that branch of the motion of the NWAS defendants which was for summary judgment dismissing so much of the ninth cause of action as alleged wrongdoing based on a donation of Miller and his group to the Hospital Foundation. In opposition to the NWAS defendants' submissions establishing their prima facie entitlement to judgment as a mat-

ter of law, the plaintiffs failed to raise a triable issue of fact as to whether the donation constituted a kickback. Similarly, the plaintiffs failed to raise a triable issue of fact as to the same kickback allegations asserted in the eighth cause of action, alleging unfair competition on the part of the Hospital defendants.

The remaining part of the eighth cause of action alleged unfair competition based on a theory of conspiracy. "Although an independent cause of action for civil conspiracy is not recognized in this State . . . a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme" (*Litras v Litras*, 254 AD2d 395, 396 [1998]; *see Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d 968, 969 [1986]; *Gouldsbury v Dan's Supreme Supermarket*, 154 AD2d 509, 510 [1989]; *Burns Jackson Miller Summit & Spitzer v Lindner*, 88 AD2d 50, 72 [1982], *affd* 59 NY2d 314 [1983]). "The allegation of conspiracy carries no greater burden, but also no less, than to assert adequately common action for a common purpose by common agreement or understanding among a group, from which common responsibility derives" (*Goldstein v Siegel*, 19 AD2d 489, 493 [1963]; *see Green v Davies*, 182 NY 499, 503-504 [1905]; *MBF Clearing Corp. v Shine*, 212 AD2d 478, 479 [1995]; *Silver v Mohasco Corp.*, 94 AD2d 820, 821 [1983]).

The plaintiffs alleged, inter alia, that the NWAS defendants conspired with the Hospital defendants to destroy AAMK by, among other things, "unfairly and improperly assigning and allocating cases between members of [NWAS] and Plaintiffs." In support of their motion for summary judgment, the Hospital defendants submitted no documentation as to whether they conspired with the NWAS defendants in the latter's alleged acts of unfair competition with the plaintiffs, failing even to address the issue in their attorney's affirmation or affidavits in support. Accordingly, they failed to meet their prima facie burden of demonstrating the absence of a triable issue of fact as to this allegation, and the court should have denied that branch of their motion which was for summary judgment dismissing so much of the eighth cause of action as was based on allegation that they conspired with the NWAS defendants to improperly divert business from the plaintiffs to NWAS (*see* CPLR 3212 [b]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).

The Supreme Court properly granted those branches of the defendants' respective motions which were for summary judgment dismissing the cause of action alleging a violation of General Business Law § 349. Although the affidavits submitted by

the plaintiffs in opposition to the motions do raise triable issues of fact as to whether the defendants were purposely failing to assign cases to AAMK members, and whether several patients were adversely affected by this, the alleged acts did not have a "broad impact on consumers at large" (*Canario v Gunn*, 300 AD2d 332, 333 [2002] [internal quotation marks omitted]), as contemplated by the statute, nor did they involve representations or omissions "likely to mislead a reasonable consumer acting reasonably under the circumstances" (*Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d 330, 344 [1999] [internal quotation marks omitted]; *see Karlin v IVF Am.*, 93 NY2d 282, 294 [1999]; *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 25 [1995]). Rather, this case involves precisely the type of "[p]rivate contract dispute[ ], unique to the parties, [that] would not fall within the ambit of the statute" (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d at 25).

The Supreme Court also properly denied that branch of the Hospital defendants' motion which was for summary judgment dismissing the first and second causes of action alleging breach of contract and breach of the implied covenant of good faith and fair dealing, respectively. The Hospital's bylaws in this case were sufficiently clear and specific to form the basis of a claim alleging breach of contract (*see Mason v Central Suffolk Hosp.*, 3 NY3d 343, 348-349 [2004]; *Chuz v St. Vincent's Hosp.*, 186 AD2d 450, 451 [1992]; *Saha v Record*, 177 AD2d 763, 764 [1991]; *Giannelli v St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 160 AD2d 227, 232 [1990]; *Chalasani v Neuman*, 97 AD2d 806 [1983], *revd on other grounds* 64 NY2d 879 [1985]). Moreover, in opposition to the Hospital defendants' submissions establishing their prima facie entitlement to judgment as a matter of law, the plaintiffs submitted sufficient evidence to raise a triable issue of fact as to whether the Hospital defendants breached the contract with the plaintiffs by diminishing their privileges without cause. There is no merit to the Hospital defendants' contention that the bylaws are not supported by consideration. "Consideration consists of either a benefit to the promisor or a detriment to the promisee. It is enough that something is promised, done, forborne, or suffered by the party to whom the promise is made as consideration for the promise made to him" (*Anand v Wilson*, 32 AD3d 808, 809 [2006]; *see Weiner v Mc-Graw-Hill, Inc.*, 57 NY2d 458, 464 [1982]). Here, the contract contained in the bylaws was supported by consideration in the form of the plaintiffs' years of services provided to the Hospital under the terms of the bylaws (*see Rooney v Tyson*, 91 NY2d 685, 692 [1998]; *Weiner v McGraw-Hill, Inc.*, 57 NY2d 458

[1982]; *Matter of Ball [SFX Broadcasting]*, 236 AD2d 158, 161 [1997]).

Lastly, the court properly denied that branch of the NWAS defendants' motion which was for summary judgment dismissing the twelfth cause of action alleging unjust enrichment. "To prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered' " (*Citibank, N.A. v Walker*, 12 AD3d 480, 481 [2004], quoting *Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415, 421 [1972], *cert denied* 414 US 829 [1973]; *see Cruz v McAneney*, 31 AD3d 54, 59 [2006]; *Lake Minnewaska Mtn. Houses v Rekis*, 259 AD2d 797, 798 [1999]). In opposition to the NWAS defendants' submissions establishing their prima facie entitlement to judgment as a matter of law, the plaintiffs submitted sufficient evidence to raise a triable issue of fact as to whether cases that should have been assigned to AAMK doctors were assigned to NWAS doctors, whether the NWAS defendants were unjustly enriched at the expense of the plaintiffs, and whether it would be "against equity and good conscience to permit the [NWAS] defendant[s] to retain" the money they earned for services that the plaintiffs should have been given the opportunity to provide (*see Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415, 421 [1972]). Miller, J.P., Dickerson, Leventhal and Belen, JJ., concur.