In an action, inter alia, to recover damages for unjust enrichment, aiding and abetting a fraud, and money had and received, the defendants Bunge Ltd. and Bunge S.A. appeal, as limited by their brief, from so much of an order of the Supreme Court, Westchester County (Scheinkman, J), dated April 4, 2012, as denied those branches of their motion pursuant to CFLR 3211 (a) which were to dismiss the first, second, and fifth causes of action insofar as asserted against them.
Ordered that the order is reversed insofar as appealed from, on the law, with costs, and those branches of the motion of the defendants Bunge Ltd. and Bunge S.A. pursuant to CFLR 3211 (a) which were to dismiss the first, second, and fifth causes of action insofar as asserted against them are granted.
The plaintiffs, Vikas Goel and Rainforest Trading, Ltd. (hereinafter Rainforest), commenced this action against the defendants, Anush Ramachandran, Bunge Ltd., and Bunge S.A. The plaintiffs alleged that they lost approximately $100 million as a result of a fraudulent scheme orchestrated by the defendants.
The amended complaint (hereinafter the complaint) alleged that Goel, a resident of Dubai, owned 99.99% of eSys Technologies Fte Ltd. (hereinafter eSys), a company incorporated under the laws of Singapore. In 2006, Goel was contacted by a repre *784 sentative of Teledata Informatics (hereinafter Teledata), a company organized under the laws of the British Virgin Islands. The representative informed Goel that Teledata was interested in acquiring shares of eSys.
By agreement dated November 29, 2006 (hereinafter the Share Subscription Agreement), Teledata agreed to purchase 51% of the shares of eSys. The complaint alleged that the purchase price was originally $105 million, then subsequently increased to $120 million. The transaction was to be accomplished through the creation of Rainforest, which was to serve as a holding company. Pursuant to the Share Subscription Agreement, Goel transferred all of his shares of eSys to Rainforest. The complaint alleged that in return, Rainforest issued 65 million shares to Goel and 55 million shares to Teledata. Goel then transferred 6.5 million of his shares in Rainforest to Teledata, which, in turn, pledged those shares to the State Bank of India as collateral for an $80 million loan.
The complaint alleged that Teledata was to invest $25 million of its own funds along with the $80 million loan from the State Bank of India. A bank account was established for Rainforest to enable Teledata to transfer the purchase funds pursuant to the Share Subscription Agreement. The complaint alleged that, since Teledata obtained the controlling interest in Rainforest after the distribution of the Rainforest shares, it “assumed the managerial role[ ] of the majority shareholder” and had “control over disbursements from [Rainforest’s] bank account.”
The complaint alleged that “Teledata did not intend to, and did not, invest the $25 million into Rainforest that it had agreed to.” The complaint alleged that Teledata “ultimately transferred only a small fraction of the money, a substantial part of which was re-routed back to Teledata.” The complaint specified that instead of transferring the $25 million into Rainforest’s account, Teledata transferred “much smaller sums” into the Rainforest account, then caused those sums to be transferred out of Rainforest’s account to the defendant Bunge S.A. and to separate, unidentified entities that were allegedly controlled by Ramachandran. The complaint further alleged that Bunge S.A. claimed that it was entitled to the money it received from the Rainforest account pursuant to contracts it had with Teledata, pursuant to which Teledata owed it money.
The complaint alleged that “all of the funds that were transferred out of the Rainforest Account were transferred either directly or indirectly through Ramachandran-controlled companies, into Bunge accounts” and that these funds were, in turn, “transferred to Teledata, or Teledata-controlled companies *785 to be ‘re-invested’ into Rainforest.” The plaintiffs asserted that “[b]y doing this, Teledata, ultimately had records showing that it had invested $25 million into Rainforest, while in truth, it had not done so. Rather, it had wired much smaller amounts into Rainforest, but by the circular pattern described above, wired such amounts over and over again, so that it appeared it had invested much more.”
The complaint asserted five causes of action against the defendants. As relevant here, four causes of action were asserted against Bunge Ltd. and Bunge S.A. (hereinafter together the Bunge defendants): the first cause of action was for money had and received, the second cause of action alleged unjust enrichment, the third cause of action alleged tortious interference with contract, and the fifth cause of action alleged aiding and abetting fraud. These four causes of action were asserted directly against Bunge S.A. for its allegedly tortious conduct. With respect to Bunge Ltd., the complaint alleged that Bunge S.A. was its alter ego, and the four causes of action described above were asserted against Bunge Ltd. under a theory of piercing the corporate veil.
The Bunge defendants thereafter moved to dismiss the complaint insofar as asserted against them pursuant to CPLR 3211 (a) (7) and insofar as asserted against Bunge S.A. pursuant to CPLR 3211 (a) (8). The Bunge defendants contended, inter alia, that the Supreme Court lacked personal jurisdiction over Bunge S.A., a corporation located and incorporated in Switzerland. The Bunge defendants further contended that the complaint failed to state a cause of action for money had and received, unjust enrichment, or aiding and abetting fraud, and that the complaint was insufficient to state a cause of action against Bunge Ltd. under a theory of piercing the corporate veil. The Bunge defendants also argued that the complaint failed to state a cause of action to recover damages for tortious interference with contract and that, in any event, any such cause of action was time-barred.
The plaintiffs opposed the motion of the Bunge defendants. The plaintiffs contended, among other things, that the Supreme Court had personal jurisdiction over Bunge S.A. under the “mere department” and agency tests for personal jurisdiction by virtue of its relationship with Bunge Ltd., a corporation with its principal place of business in New York. The plaintiffs further contended that they had made a “sufficient start” in demonstrating that facts “may exist” which would establish personal jurisdiction over Bunge S.A. such that they should be granted jurisdictional discovery pursuant to CPLR 3211 (d). *786 The plaintiffs also opposed those branches of the motion of the Bunge defendants which were pursuant to CPLR 3211 (a) (7).
The Supreme Court denied that branch of the motion of the Bunge defendants which was to dismiss the complaint insofar as asserted against Bunge S.A. pursuant to CPLR 3211 (a) (8) for lack of personal jurisdiction. The Supreme Court concluded that the plaintiffs had made a sufficient start in demonstrating that facts may exist so as to support the exercise of jurisdiction pursuant to CPLR 301. In this regard, the court concluded that, “because the evidence [was] sufficient to support the exercise of jurisdiction on the mere department theory, the Court will deny the Bunge Defendants’ motion to dismiss on jurisdictional grounds, without prejudice to the assertion of such a jurisdictional defense at trial, should these Defendants be so advised.”
The Supreme Court also denied those branches of the Bunge defendants’ motion which were to dismiss the first, second, and fifth causes of action insofar as asserted against them pursuant to CPLR 3211 (a) (7). However, the court granted that branch of their motion which was to dismiss as time-barred the third cause of action, which alleged tortious interference with contract.
On appeal, the Bunge defendants contend that the Supreme Court erred in denying that branch of their motion which was to dismiss the complaint insofar as asserted against Bunge S.A. pursuant to CPLR 3211 (a) (8) for lack of personal jurisdiction. They further contend that the Supreme Court erred in denying those branches of their motion which were to dismiss the first, second, and fifth causes of action pursuant to CPLR 3211 (a) (7).
We first address the Bunge defendants’ contention regarding personal jurisdiction over Bunge S.A. However, we note that, in light of our determination granting those branches of the Bunge defendants’ motion which were to dismiss the only remaining causes of action asserted against these defendants for failure to state a cause of action, it will not be necessary for the Supreme Court to resolve the issue of whether it has personal jurisdiction over Bunge S.A.
“A foreign corporation is amenable to suit in New York courts under CPLR 301 if it has engaged in such a continuous and systematic course of ‘doing business’ here that a finding of its ‘presence’ in this jurisdiction is warranted” (Landoil Resources Corp. v Alexander & Alexander Servs., 77 NY2d 28, 33 [1990], quoting Laufer v Ostrow, 55 NY2d 305, 309-310 [1982], and Frummer v Hilton Hotels Intl., 19 NY2d 533, 536 [1967], and Simonson v International Bank, 14 NY2d 281, 285 [1964]). The *787 test is whether “the aggregate of the corporation’s activities in the State [are] such that it may be said to be ‘present’ in the State ‘not occasionally or casually, but with a fair measure of permanence and continuity’ ” (Laufer v Ostrow, 55 NY2d at 310, quoting Tauza v Susquehanna Coal Co., 220 NY 259, 267 [1917]). Any exercise of jurisdiction over a foreign corporation on the basis of state law must comport with the due process requirement that there be sufficient “minimum contacts” between the foreign corporation and the forum State such that the forum State’s assertion of jurisdiction will not offend “ ‘traditional notions of fair play and substantial justice’ ” (International Shoe Co. v Washington, 326 US 310, 316 [1945], quoting Milliken v Meyer, 311 US 457, 463 [1940]).
Here, the Supreme Court concluded that the plaintiffs failed to sustain their burden of demonstrating that Bunge S.A., a Swiss corporation, had directly engaged in activities sufficient to establish its presence in New York within the meaning of CPLR 301. However, it determined that facts may exist which would permit it to impute the in-state activities of Bunge Ltd. to Bunge S.A., such that Bunge S.A. may be deemed to be vicariously present in New York pursuant to CPLR 301.
In its limited jurisprudence concerning the mere department doctrine, the primary focus of the Court of Appeals has been on the degree of control exercised by the domestic corporation over the foreign corporation (see Delagi v Volkswagenwerk AG of Wolfsburg, Germany, 29 NY2d 426, 431-432 [1972]; Public Adm’r of County of N.Y. v Royal Bank of Can., 19 NY2d 127, 131-132 [1967]). Such control may be manifested in numerous ways and, thus, the method by which such control may be demonstrated will necessarily depend on the attendant facts (see Delagi v Volkswagenwerk AG of Wolfsburg, Germany, 29 NY2d at 431-432; Public Adm’r of County of N.Y. v Royal Bank of Can., 19 NY2d at 131-132; compare Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 141 [1993]). Although the Court of Appeals has noted that it “has never held a foreign corporation present on the basis of control, unless there was in existence at least a parent-subsidiary relationship,” it has nevertheless indicated that this factor is not dis-positive (Delagi v Volkswagenwerk AG of Wolfsburg, Germany, 29 NY2d at 432). “The control over [a] subsidiary’s activities . . . must be so complete that the subsidiary is, in fact, merely a department of the parent” (id.). It is only when the two corporations are “in fact, if not in name . . . one and the same corporation, [that] there is realistically no basis for distinguishing between them” for jurisdictional purposes (Public Adm’r of County of N.Y. v Royal Bank of Can., 19 NY2d at 132).
*788 Here, the plaintiffs, as the parties seeking to assert personal jurisdiction, bear the ultimate burden of proof as to whether Bunge S.A. is a mere department of Bunge Ltd. (see Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC, 90 AD3d 977, 978 [2011]). In opposition to the Bunge defendants’ motion to dismiss the complaint insofar as asserted against Bunge S.A. pursuant to CPLR 3211 (a) (8) on the ground of lack of personal jurisdiction, the plaintiffs “need only make a prima facie showing” that such jurisdiction exists (Cornely v Dynamic HVAC Supply, LLC, 44 AD3d 986, 986 [2007]).
However, where, as here, plaintiffs oppose a motion to dismiss the complaint pursuant to CPLR 3211 (a) (8) on the ground that discovery on the issue of personal jurisdiction is necessary, plaintiffs need not make a prima facie showing of jurisdiction, but instead “need only demonstrate that facts ‘may exist’ to exercise personal jurisdiction over the defendant” (Ying Jun Chen v Lei Shi, 19 AD3d 407, 407-408 [2005], quoting Peterson v Spartan Indus., 33 NY2d 463, 467 [1974]). If “it appear[s] from affidavits submitted in opposition to [the] motion . . . that facts essential to justify opposition may exist but cannot then be stated,” a court may, in the exercise of its discretion, postpone resolution of the issue of personal jurisdiction (CPLR 3211 [d]).
Here, it is undisputed that Bunge S.A. is a wholly-owned subsidiary of Bunge Ltd. The plaintiffs submitted evidence indicating a degree of financial interdependency between Bunge Ltd. and its various wholly-owned subsidiaries, although funding appeared to be formalized as loan agreements. In addition, the plaintiffs adduced evidence indicating an overlap of executive personnel between Bunge Ltd. and a regional business grouping of Bunge subsidiaries identified as “Bunge Europe,” and, in turn, an overlap of executive personnel between Bunge Europe and Bunge S.A. The plaintiffs also submitted evidence indicating that Bunge Ltd. had represented Bunge S.A. as the “headquarters of Bunge’s European activities and the main trading office Bunge worldwide.”
Although there was evidence of a close parent-subsidiary connection between Bunge Ltd. and Bunge S.A., the Supreme Court correctly concluded that the plaintiffs’ submissions failed to establish, prima facie, that the control exerted by Bunge Ltd. over Bunge S.A. was “so complete that the subsidiary is, in fact, merely a department of the parent” (Delagi v Volkswagenwerk AG of Wolfsburg, Germany, 29 NY2d at 432; see Public Adm’r of County of N.Y. v Royal Bank of Can., 19 NY2d at 132). Nevertheless, the plaintiffs’ submissions did indicate that Bunge Ltd. exerted some degree of control over its subsidiaries through *789 internal business groupings which were comprised of employees of its various subsidiaries and organized to achieve common purposes under its direction. Since the plaintiffs demonstrated that facts “may exist” which would permit the exercise of personal jurisdiction over Bunge S.A., but that such facts remain in the exclusive control of the Bunge defendants, the Supreme Court providently exercised its discretion in denying that branch of the Bunge defendants’ motion which was to dismiss the complaint insofar as asserted against Bunge S.A. pursuant to CPLR 3211 (a) (8) for lack of personal jurisdiction (CPLR 3211 [d]; see Peterson v Spartan Indus., 33 NY2d at 467).
However, the Supreme Court improvidently exercised its discretion to the extent that it denied that branch of the Bunge defendants’ motion which was to dismiss the complaint insofar as asserted against Bunge S.A. pursuant to CPLR 3211 (a) (8) “without prejudice to the assertion of such a jurisdictional defense at trial.” “Liability may be considered only after it is decided . . . that the defendant is subject to the in personam jurisdiction of our courts” (Kreutter v McFadden Oil Corp., 71 NY2d 460, 470 [1988]). By permitting the case to move forward in such a manner, the Supreme Court exposed Bunge S.A. to the full panoply of burdens inherent in defending this case, despite the fact that the court may not have jurisdiction over it. Under the circumstances of this case, the Supreme Court should have denied that branch of the Bunge defendants’ motion without prejudice to renewal upon the completion of limited discovery confined to the issue of whether Bunge S.A. was a mere department of Bunge Ltd. (see Expert Sewer & Drain, LLC v New England Mun. Equip. Co., Inc., 106 AD3d 775, 776 [2013]; Marist Coll. v Brady, 84 AD3d 1322, 1322 [2011]).
We now turn to the merits of that branch of the motion of the Bunge defendants which was to dismiss the first, second, and fifth causes of action insofar as asserted against them pursuant to CPLR 3211 (a) (7) for failure to state a cause of action. “On a motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the court must afford the pleading a liberal construction, accept all facts as alleged in the pleading to be true, accord the plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory” (Breytman v Olinville Realty, LLC, 54 AD3d 703, 703-704 [2008]; see Leon v Martinez, 84 NY2d 83, 87-88 [1994]).
The first cause of action asserted against the Bunge defendants was for money had and received. “A cause of action for money had and received is one of quasi-contract or of contract *790 implied-in-law” (Board of Educ. of Cold Spring Harbor Cent. School Dist. v Rettaliata, 78 NY2d 128, 138 [1991]; see Parsa v State of New York, 64 NY2d 143, 148 [1984]). “Having money that rightfully belongs to another, creates a debt; and wherever a debt exists without an express promise to pay, the law implies a promise” (Byxbie v Wood, 24 NY 607, 610 [1862]).
The essential elements of a cause of action for money had and received are (1) the defendant received money belonging to the plaintiff, (2) the defendant benefitted from receipt of the money, and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money (see Matter of Witbeck, 245 AD2d 848, 850 [1997]; see also Rocks & Jeans v Lakeview Auto Sales & Serv., 184 AD2d 502, 502 [1992]; see generally 22A NY Jur 2d Contracts § 533 [2013]). “The action depends upon equitable principles in the sense that broad considerations of right, justice and morality apply to it” (Parsa v State of New York, 64 NY2d at 148; see People ex rel. Dusenbury v Speir, 77 NY 144, 150 [1879]).
Here, the complaint alleged that, after the distribution of the Rainforest shares, Teledata obtained the controlling interest in Rainforest, it assumed the managerial role of the majority shareholder, and it was in a position of control over disbursements from Rainforest’s bank account. The complaint alleged that Teledata, in its role as majority shareholder of Rainforest, transferred certain funds “out of the Rainforest Account . . . either directly or indirectly through Ramachandran-controlled companies, into Bunge accounts” and that these funds were, in turn, “transferred to Teledata, or Teledata-controlled companies to be ‘re-invested’ into Rainforest.”
The complaint does not allege that the transfers were made to Bunge S.A. for no legitimate purpose. In addition, the complaint does not allege that the transfers were the result of a mistake, or were unlawful or unauthorized. Indeed, the complaint itself alleges that the transfers were precipitated by Teledata, which, as alleged, was the majority shareholder of Rainforest with the legal authority to control Rainforest’s bank accounts and transfer money therefrom. The only theory articulated in the complaint as to why the money transferred rightfully belongs to Rainforest is that the transfer constituted a breach of the Share Subscription Agreement by Teledata. This allegation, that Teledata breached the Share Subscription Agreement by failing to adequately capitalize Rainforest, does not render the money transferred to Bunge S.A. the rightful property of Rainforest. Accordingly, the factual allegations are insufficient to state a cause of action for money had and received, *791 since the complaint failed to adequately allege that Bunge S.A. received money that “rightfully belongs” to Rainforest (Byxbie v Wood, 24 NY at 610; see McCulloch v Town of Milan, 74 AD3d 1034, 1036 [2010]; Amanat v Bank Leumi Trust Co. of N.Y., 243 AD2d 257, 257 [1997]; Stephans v Apostol, 17 AD2d 982, 983 [1962]).
The second cause of action asserted against the Bunge defendants was to recover damages for unjust enrichment. “To prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party’s expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered” (Citibank, N.A. v Walker, 12 AD3d 480, 481 [2004] [internal quotation marks omitted]; see Robertson v Wells, 95 AD3d 862, 864 [2012]; Levin v Kitsis, 82 AD3d 1051, 1053 [2011]; Anesthesia Assoc. of Mount Kisco, LLP v Northern Westchester Hosp. Ctr., 59 AD3d 473, 481 [2009]).
“The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered” (Paramount Film Distrib. Corp. v State of New York, 30 NY2d 415, 421 [1972]). “Such a claim is undoubtedly equitable and depends upon broad considerations of equity and justice” (id.). “Generally, courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant’s conduct was tortious or fraudulent” (id.).
“[A] plaintiff’s allegation that the [defendant] received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment” (Old Republic Natl. Tit. Ins. Co. v Cardinal Abstract Corp., 14 AD3d 678, 680 [2005]; see McGrath v Hilding, 41 NY2d 625, 629 [1977]; Erlitz v Segal, Liling & Erlitz, 142 AD2d 710, 712 [1988]). “Critical is that under the circumstances and as between the two parties to the transaction the enrichment be unjust” (McGrath v Hilding, 41 NY2d at 629, citing Restatement of Restitution § 1, Comment a).
Here, the amended complaint merely asserted, in a conclusory fashion, that Bunge S.A. received funds from which it benefit-ted and that “[e]quity and good conscience require restitution.” However, on a motion to dismiss pursuant to CPLR 3211 (a) (7), “bare legal conclusions are not presumed to be true” (Khan v MMCA Lease, Ltd., 100 AD3d 833, 833 [2012]; see Felix v Thomas R. Stachecki Gen. Contr., LLC, 107 AD3d 664, 667 *792 [2013]). Accordingly, the bare legal conclusion that it is against equity and good conscience to permit Bunge S.A. to retain this unidentified benefit is insufficient to adequately allege that the asserted enrichment was unjust (see Felix v Thomas R. Stachecki Gen. Contr., LLC, 107 AD3d at 667; Khan v MMCA Lease, Ltd., 100 AD3d at 833).
In addition, the general factual assertions contained in the complaint do not satisfy the pleading requirements of unjust enrichment. As previously noted, the complaint did not allege that Bunge S.A. received the transfers through some mistake or deception practiced upon Rainforest by Bunge S.A. The complaint alleged that the transfers were duly authorized by Teledata, which was in control of Rainforest’s bank account through its role as the majority shareholder. The fact that Teledata may have breached the Share Subscription Agreement or some other legal duty owed to the plaintiffs when it made the transfers does not render the transfers “unjust” with respect to Bunge S.A. (McGrath v Hilding, 41 NY2d 625, 629 [1977]; see Citibank, N.A. v Walker, 12 AD3d at 481). Accepting the facts alleged in the complaint as true, and according the plaintiff the benefit of every favorable inference (see Leon v Martinez, 84 NY2d at 87-88), the complaint fails to state a cause of action to recover damages for unjust enrichment (see Robertson v Wells, 95 AD3d at 864; Levin v Kitsis, 82 AD3d at 1053; Spector v Wendy, 63 AD3d 820, 822 [2009]).
The fifth cause of action asserted in the complaint alleged aiding and abetting fraud. “A plaintiff alleging an aiding-and-abetting fraud claim must allege the existence of the underlying fraud, actual knowledge, and substantial assistance” (Oster v Kirschner, 77 AD3d 51, 55 [2010]; see High Tides, LLC v DeMichele, 88 AD3d 954, 960 [2011]). Aiding and abetting fraud “is not made out simply by allegations which would be sufficient to state a claim against the principal participants in the fraud” combined with conclusory allegations that the aider and abettor had actual knowledge of such fraud (National Westminster Bank v Weksel, 124 AD2d 144, 149 [1987]; see CDR Creances S.A.S. v First Hotels & Resorts Invs., Inc., 101 AD3d 485, 486-487 [2012]). “Aiding and abetting fraud must be pleaded with the specificity sufficient to satisfy CPLR 3016 (b)” (High Tides, LLC v DeMichele, 88 AD3d at 960; see Jones v OTN Enter., Inc., 84 AD3d 1027, 1028 [2011]; Rizel v Bodner, 225 AD2d 410 [1996]; Shearson Lehman Bros. v Bagley, 205 AD2d 467 [1994]; National Westminster Bank v Weksel, 124 AD2d at 149). The heightened pleading requirements of CPLR 3016 (b) may be met when the material facts alleged in the complaint, in *793 light of the surrounding circumstances, “are sufficient to permit a reasonable inference of the alleged conduct” including the adverse party’s knowledge of, or participation in, the fraudulent scheme (Pludeman v Northern Leasing Sys., Inc., 10 NY3d 486, 492 [2008]; see Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 559 [2009]; Polonetsky v Better Homes Depot, 97 NY2d 46, 55 [2001]; High Tides, LLC v DeMichele, 88 AD3d at 960).
Here, the complaint consists of conclusory allegations regarding the Bunge defendants’ knowledge that Teledata entered into the Share Subscription Agreement with the intent to defraud Goel. Furthermore, the facts alleged in the complaint are insufficient to permit a reasonable inference as to the Bunge defendants’ knowledge of this fraud and their substantial assistance in the achievement of the fraud (see CDR Creances S.A.S. v First Hotels & Resorts Invs., Inc., 101 AD3d 485, 486-487 [2012]; High Tides, LLC v DeMichele, 88 AD3d at 960; National Westminster Bank v Weksel, 124 AD2d at 149). Accordingly, the complaint fails to state a cause of action alleging aiding and abetting fraud.
The complaint also alleged that Bunge Ltd. is liable under a theory of piercing the corporate veil with respect to the first, second, and fifth causes of action. Since the complaint fails to adequately set forth these underlying causes of action against Bunge S.A., those causes of action must be dismissed as against Bunge Ltd., since “an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its [parent]” (Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 141 [1993]).
The Bunge defendants’ contention that the mere department test is unconstitutional (see Goodyear Dunlop Tires Operations, S.A. v Brown, 564 US —, 131 S Ct 2846 [2011]; see also Lea Brilmayer and Kathleen Paisley, Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies, and Agency, 74 Cal L Rev 1, 27 [1986]), is raised for the first time on appeal and, thus, is not properly before this Court.
In light of the foregoing, we need not address the parties’ remaining contentions.
Accordingly, we reverse the order insofar as appealed from, and grant those branches of the Bunge defendants’ motion pursuant to CPLR 3211 (a) which were to dismiss the first, second, and fifth causes of action insofar as asserted against them. Skelos, J.P, Balkin, Cohen and Miller, JJ., concur.