Fang Wang v TD Ameritrade Holding Corp. (2024 NY Slip Op 51129(U))

[*1]

Fang Wang v TD Ameritrade Holding Corp.

2024 NY Slip Op 51129(U)

Decided on July 24, 2024

Supreme Court, New York County

Lebovits, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 24, 2024
Supreme Court, New York County

Fang Wang, Plaintiff,

against
TD Ameritrade Holding Corporation, and TD AMERITRADE, INC., Defendants.

Index No. 652729/2023

Law Offices of Neal Brickman, P.C., New York, NY (Neal Brickman of counsel), for plaintiff.
Davis Wright Tremaine LLP, Washington, DC (Eric A. Bensky of counsel), for defendant.

Gerald Lebovits, J.

This action is brought by plaintiff, Fang Wang, against defendants, TD Ameritrade Holding Corporation and TD Ameritrade, Inc. (collectively, TDA). The action arises from numerous securities trades made by nonparty Surage Perera from a TDA account on margin, secured by funds that Wang alleges he obtained from her by fraud.
From February 2022 to August 2022, Wang wired approximately $4.3 million to Perera through a bank account at his capital marketing advisory firm, Janues Capital, Inc. (NYSCEF No. 1 at 5-6). Perera had offered to allocate restricted stock for four different issuers at a discount to Wang with promises of guaranteed returns. (NYSCEF No. 1 at 7). Perera offered fake subscription agreements to Wang and did not use any of Wang's money in accordance with what he had told her. (NYSCEF No. 1 at 8). Perera also sent Wang fraudulent confirmations of these transactions, each of which listed his wife's TDA account number.
Nonparty Nishami Alahakoon is Perera's wife. She opened a brokerage account with TDA on February 28, 2022, with a balance of $115.70. (NYSCEF No. 1 at 6). Alahakoon allegedly did not indicate that she had investment experience, that she had recurring sources of money or significant assets, or information regarding her husband. (NYSCEF No. 1 at 6). TDA allegedly never investigated the source of the money. (NYSCEF No. 1 at 6).
Perera allegedly transferred most of his funds from his Janues bank account to his personal account, before transferring most of those funds to Alahakoon's TDA account. [*2](NYSCEF No. 1 at 9). From March 2022 through February 2023, the TDA account traded in more than 100 different securities and received significant margin loans from TDA, secured by the assets in the TDA account. (NYSCEF No. 1 at 9). This trading resulted in "$1,492,685,444.30 in securities" purchased and "$1,439,571,821.73 in securities" sold, "resulting in losses of over $3 million." (NYSCEF No. 1 at 9)
In March 2023, Perera was indicted by the U.S. Attorney's Office for the Eastern District of New York and charged with 16 counts of fraud. (NYSCEF No. 1 at 8). A week later, the Securities and Exchange Commission filed a civil enforcement action against Perera and Janues. (NYSCEF No. 1 at 8-9).
Wang brought this action in June 2023 against TDA, asserting claims for negligence, conversion, and aiding and abetting fraud. TDA now moves under CPLR 3211 (a) (7) to dismiss Wang's complaint in its entirety. The motion is granted.
DISCUSSION
I. The Branch of TDA's Motion Seeking Dismissal of Wang's Negligence Claims
TDA moves under CPLR 3211 (a) (7) to dismiss Wang's claims sounding in negligence and negligence per se. The motion is granted.
A. Wang's Negligence Claim
To make out a negligence claim, a plaintiff must plead "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." (Rodriguez v Budget Rent-A-Car Sys., Inc., 44 AD3d 216, 221 [1st Dept 2007] [internal quotation marks].) Wang has not sufficiently pleaded that TDA owed her a duty.
Wang asserts that "[b]anking institutions, like TD Ameritrade, owe Wang, and other non-customer members of the investing public, an ordinary duty of reasonable care." (NYSCEF No 16 at 7.) But banks generally "do not owe non-customers a duty to protect them from the intentional torts of their customers." (Winkler v Battery Trading, 89 AD3d 1016, 1018 [2d Dept 2011].) And holding that "banks owe a duty to their depositors' creditors to monitor the depositors' financial activities so as to assure the creditors' collection of the depositors' debts would be to unreasonably expand banks' orbit of duty." (Century Bus. Credit Corp v North Fork Bank, 246 AD2d 395, 396 [1st Dept 1998].) Nor does TDA's obligation to comply with the rules of the Financial Industry Regulatory Authority (FINRA) mean that TDA owed her a duty as a non-customer. (See Wendt v Bent Pyramid Prods., LLC, 108 AD3d 1032, 1032-1033 [4th Dept 2013] [rejecting plaintiff's argument "that industry standards or the rules and regulations of FINRA imposed a duty of care sufficient to support a private cause of action under New York common law for negligent supervision"].)
Wang points to caselaw suggesting that in extraordinary circumstances banks might owe a duty to non-customers. But the decision of the Appellate Division, First Department, in Elmaliach v Bank of China Ltd., cited by Wang, does not hold that plaintiff had a claim under New York tort law—only that applying Israeli law permitting the claims at issue would not violate New York public policy. (See 110 AD3d 192, 207 [1st Dept 2013].) Wang also relies on a federal trial-court decision applying New York law. (See NYSCEF No. 16 at 11, citing Doe 1 v Deutsche Bank AG, 671 F Supp 3d 387 [SD NY 2023].) But that decision does not bind this [*3]court. Nor, in any event, is this court persuaded that the facts of that case are comparable to those here.[FN1]
(See Deutsche Bank AG, 671 F Supp 3d at 414-415 [holding that plaintiffs stated negligence claims against banks based on detailed allegations that defendants each knowingly or recklessly provided "banking services sustain[ing] Jeffrey Epstein's sex-trafficking venture" over successive several-year periods].)
Absent a duty of care owed by TDA to Wang, there can be no viable negligence claim.
B. Wang's Negligence Per Se Claim
Wang also argues that she has stated a cause of action for negligence per se. Under this doctrine, "[a]n actor is negligent if, without excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect." (Restatement 3d of Torts § 14.) Wang asserts she has sufficiently alleged negligence per se by claiming TDA "ignored, and willfully violated," several regulations, specifically FINRA rules. (NYSCEF No. 16 at 14.) This court disagrees.
The "violation of a rule of an administrative body, lacking the force and effect of a substantive legislative enactment, 'did not establish negligence per se.'" (Conte v Large Scale Development Corp., 10 NY2d 20 [1961], quoting Schumer v Caplin, 241 NY 346, 351 [1925].) Instead, the violation is "'simply some evidence of negligence which the jury could take into consideration with all the other evidence bearing on that subject.'" (Id.; accord Bauer v Female Acad. of the Sacred Heart, 97 NY2d 445, 453 [2002].) And FINRA is not even a governmental administrative body. Rather, it is a self-regulatory organization, authorized by the U.S. Securities and Exchange Commission pursuant to the Securities Exchange Act (1934) to adopt rules "regarding the size of positions in any security-based swap" and "to adopt rules reasonably designed to ensure compliance" under the Act. (Securities Exchange Act of 1934 § 10B [c] [1].) This court sees no basis to conclude that the violation of FINRA rules may, standing alone, support a claim for negligence per se—particularly given that no private cause of action exists for violation of FINRA rules (see Matter of Grace Fin. Group, LLC v Dino, 138 AD3d 644, 645 [1st Dept 2016]).
[*4]II. The Branch of TDA's Motion Seeking Dismissal of Wang's Conversion Claim
TDA also moves under CPLR 3211 (a) (7) to dismiss Wang's conversion claim. The motion is granted.
To state a cause of action in conversion, Wang must allege that she had "legal title or an immediate superior right of possession to the identifiable fund" and that defendant exercised "unauthorized dominion over the money in question to the exclusion of [her] plaintiff's rights." (Iberdrola Energy Projects v MUFG Union Bank, 218 AD3d 409, 410 [1st Dept 2023] [internal quotation marks omitted].) Money can be the subject of a conversion action only if it is specifically identifiable. (See Petron v Davidoff Hutcher & Citron, 150 AD3d 776, 777 [2nd Dept 2017.] To determine whether the funds at issue are "specifically identifiable," courts look to whether the funds "constitute a 'specific sum,' one that is 'determinate,' and reflects an 'ascertained' amount." (Family Health Mgt., LLC v Rohan Devs., LLC, 207 AD3d 136, 145 [1st Dept 2022] [quoting Manufacturers Hanover Trust Co. v Chemical Bank, 160 AD2d 113, 124 [1st Dept 1990].)
Wang has not alleged the existence of a specifically identifiable fund. That is, according to Wang herself, she transferred approximately $4.3 million to Perera, who transferred that money into his wife's TDA account. Most of that $4.3 million was then "traded countless times[,] . . . accounting for billions of dollars of sales and purchases of securities," ultimately at a multimillion-dollar loss.[FN2]
(NYSCEF No. 16 at 15; see also NYSCEF No. 1 at ¶¶ 24-25.) The money that Wang seeks to recover from TDA in conversion, approximately $3.5 million (see NYSCEF No. 1 at ¶ 42) does not correspond to the amount that Wang originally transferred to Perera, or even a portion of the transferred funds. Rather, it represents "margin interest and trade commissions" that TDA received on Perera's trading. (Id. at ¶ 39; NYSCEF No. 16 at 15.) Given the numerous transactions and transfers that occurred between Wang giving $4.3 million to Perera and TDA holding $3.5 million that it obtained from Perera's trading—and the commingling of funds at multiple stages of this process—no specifically identifiable fund exists here. (See Family Health Mgt., 207 AD3d at 143-144 & n 1, citing McBride v KPMG Intl., 135 AD3d 576 [1st Dept 2016].)
III. TDA's motion to dismiss for failure to sufficiently state a claim of aiding and abetting fraud.
TDA moves under CPLR 3211 (a) (7) to dismiss Wang's aiding-and-abetting-fraud claim for failure to state a cause of action.
The higher pleading standard for fraud claims imposed by CPLR 3016 (b) "may be met when the material facts alleged in the complaint, in light of the surrounding circumstances, 'are sufficient to permit a reasonable inference of the alleged conduct' including the adverse party's knowledge of, or participation in, the fraudulent scheme." (Goel v Ramachandran, 111 AD3d 783, 792-93 [2nd Dept 2013].)
For aiding and abetting fraud claims, "the complaint must allege the existence of an underlying fraud, knowledge of the fraud by the aider and abettor, and substantial assistance by the aider and abettor in the achievement of the fraud." (Winkler v Battery Trading, Inc., 89 AD3d 1016, 1017 [2nd Dept 2011].) A plaintiff must plead actual knowledge, not constructive knowledge. But that knowledge "need only be pleaded generally, cognizant, particularly at the prediscovery stage, that a plaintiff lacks access to the very discovery materials which would illuminate a defendant's state of mind." (AIG Fin. Prods. Corp. v ICP Asset Mgt., LLC, 108 AD3d 444, 446 [1st Dept 2013].)
Wang has not sufficiently pleaded that TDA had actual knowledge of the fraud that Perera is alleged to have committed at her expense. The complaint alleges that Perera made a series of misrepresentations at her expense to persuade her to transfer $4.3 million to an account he controlled; and that Perera then used that money to engage in extensive securities trading, ultimately at a loss.
In opposing the motion to dismiss, Wang argues that this multi-stage wrongdoing should be broken up into two acts of "primary fraud." (See NYSCEF No. 16 at 15-16.) But Wang has not alleged, and does not argue, that TDA had actual knowledge of Perera's fraudulently persuading Wang to transfer the $4.3 million to him. And Wang does not sufficiently plead that Perera's trading using those funds constituted common-law fraud committed against her. Wang does not, for example, identify knowing misrepresentations made by Perera to Wang regarding that improper trading; nor any reliance by Wang on any such misrepresentations.[FN3]
Rather, as alleged in the complaint, Perera's goal in defrauding Wang was to get her to give him her money in the (mistaken) belief that he would invest it on her behalf. Perera's subsequent day trading exploited the ill-gotten proceeds of his fraud against Wang—it was not itself a separate act of fraud against her.[FN4]

This court is somewhat skeptical of Wang's argument that TDA's alleged failure to monitor and restrict Perera's trading in his wife's account evidences actual knowledge by TDA that the trading was wrongful (or at least that TDA was willfully blind to that possibility). (Cf. Trinity Life Ins. Co. v Advance Funding LLC, 2022 NY Slip Op 30246[U] at *5 [Sup Ct, NY County 2022] [holding that plaintiff did not adequately plead actual knowledge because the factual "circumstances detailed simply show a bank providing accounts for various [*5]customers."].) But given the lack of a connection between that failure and the alleged fraud committed against Wang, the court need not reach the question. Wang has not stated an aiding-and-abetting-fraud cause of action against TDA regardless.
Accordingly, it is
ORDERED that defendants' motion to dismiss is granted, and the complaint is dismissed, with costs and disbursements as taxed by the Clerk upon the submission of an appropriate bill of costs; and it is further
ORDERED that defendants serve a copy of this order with notice of its entry on plaintiff and on the office of the County Clerk (by the means set forth in the court's e-filing protocol, available on the e-filing page of the court's website, https://ww2.nycourts.gov/courts/1jd/supctmanh/E-Filing.shtml), which shall enter judgment accordingly.
DATE 7/24/2024

Footnotes

Footnote 1:Wang also points to language from the trial-court decision in Licci v American Export Bank Ltd. (704 F Supp 2d 403 [SD NY 2010], vacated in part on other grounds by Licci v Lebanese Canadian Bank, SAL, 723 F3d 161 [2d Cir 2013]). But the passage from Licci cited by Wang begins by acknowledging the principle that "[b]anks do not owe non-customers a duty to protect them from the intentional torts committed by their customers." (704 F Supp 2d at 410.) Wang relies instead on Licci's emphasizing that a correspondent bank serving as one link in a chain of transfers of funds could not be held liable in negligence for terrorist acts committed by the ultimate recipient of the funds (Hizbollah), absent either allegations of ties between that bank and Hizbollah or allegations that the bank "knew or had reason to believe that the monies at issue would be used to carry out terrorist attacks on civilian targets." (Id.) But this court is unpersuaded that Licci's implicit acknowledgement of a possible narrow terrorism-related exception to the general lack-of-duty rule—in the course of dismissing a negligence claim against the bank—provides sufficient support to Wang's theory of negligence liability here.

Footnote 2:Plaintiff alleges that the remainder was "misappropriated to pay other defrauded investors and/or for other unauthorized uses." (NYSCEF No. 1 at ¶ 21 n 1.)

Footnote 3:At most, the complaint alleges that Perera gave Wang false subscription agreements, investment confirmations, and account statements to cover up that he had not invested her money as he had promised. (See NYSCEF No. 1 at ¶¶ 15-18.) The complaint does not allege that Perera made any misrepresentations to Wang that related to the investments that Perera did make, on his own behalf, using her money.

Footnote 4:Wang also argues that the complaint should be deemed constructively amended, apparently under CPLR 3025 (c), to include claims against TDA for aiding and abetting money laundering and theft. (See NYSCEF No. 15 at 6.) But she does not explain what new evidence has been adduced in this action since the filing of the complaint that would support constructive amendment. In any event, she does not explain how she has a claim against TDA for aiding and abetting money laundering; nor how TDA's actions aided and abetted any theft from her of the $4.3 million.