Schoch v Lake Champlain OB-GYN, P.C. (2020 NY Slip Op 03444)





Schoch v Lake Champlain OB-GYN, P.C.


2020 NY Slip Op 03444


Decided on June 18, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 18, 2020

529615

[*1]Kim E. Schoch, Appellant,
v
Lake Champlain OB-GYN, P.C., Respondent.

Calendar Date: May 20, 2020

Before: Garry, P.J., Egan Jr., Mulvey, Devine and Colangelo, JJ.


Nolan Heller Kaufman LLP, Albany (Justin A. Heller of counsel), for appellant.
Dreyer Boyajian LLP, Albany (James R. Peluso of counsel), for respondent.



Mulvey, J.
Appeal from a judgment of the Supreme Court (Crowell, J.), entered June 17, 2019 in Saratoga County, which, among other things, issued a declaration in defendant's favor.
Plaintiff, a certified nurse midwife and obstetrics/gynecology nurse practitioner, was employed by defendant from June 2007 to at least June 2014.[FN1] One of the terms of the parties' employment agreement required defendant to maintain and pay the premiums for a professional liability insurance policy. Defendant satisfied that term by obtaining from Medical Liability Mutual Insurance Company (hereinafter MLMIC) a malpractice policy that listed plaintiff as the sole insured. Plaintiff signed a form designating defendant as the policy administrator of the MLMIC policy, thereby appointing defendant as her agent and giving defendant the right to, among other things, make changes to the policy and receive dividends. Defendant paid all the premiums on the MLMIC policy covering plaintiff.
In July 2016, MLMIC applied to the Department of Financial Services (hereinafter DFS) for permission to file a plan to convert from a mutual insurance company to a stock insurance company. In accordance with Insurance Law § 7307 (e) (3), MLMIC's conversion plan provided that anyone who was a MLMIC policyholder from July 2013 to July 2016 would receive a cash consideration in exchange for the extinguishment of his or her policyholder membership interest. Plaintiff did not sign a special consent form distributed by MLMIC to policyholders that would designate someone else (i.e., defendant) to receive her share of the cash consideration. Pursuant to a provision in the conversion plan, defendant objected to the distribution of the cash consideration — in the amount of $74,747.03 — to plaintiff, and MLMIC placed the disputed cash consideration in escrow pending resolution of the dispute. Eventually, DFS approved the conversion plan, MLMIC's members voted in favor of it and MLMIC completed the demutualization.
Thereafter, plaintiff commenced this declaratory judgment action asserting that, as the policyholder with a membership interest in MLMIC and absent an assignment of her membership interest to defendant, she is entitled to receive the cash consideration. Defendant raised affirmative defenses and counterclaims asserting, among other things, unjust enrichment and requested a declaration that the cash consideration must be distributed to defendant. After joinder of issue, plaintiff moved and defendant cross-moved for summary judgment. Supreme Court, concluding that it was bound by a recent First Department decision (Matter of Schaffer, Schonholz & Drossman, LLP v Title, 171 AD3d 465 [2019]), denied plaintiff's motion, granted defendant's cross motion and declared that defendant was entitled to a judgment awarding it the cash consideration, on the basis that plaintiff would be unjustly enriched if she received the money. Plaintiff appeals.
Plaintiff contends that, pursuant to statute, the conversion plan, DFS's decision approving the plan and under the common law, she is entitled to the cash consideration because she was the policyholder with a membership interest in MLMIC. Defendant argues that these same sources entitle it to receive the cash consideration because it paid the premiums and had control over the policy. Alternatively, defendant argues that plaintiff would be unjustly enriched if she were to receive the cash consideration.
Before the conversion, MLMIC was a mutual insurance company, meaning that it was owned by, maintained and operated for the benefit of its members. By statute, "[e]very policyholder shall be a member of such corporation" (Insurance Law § 1211 [a]). Accordingly, policyholders have a dual relationship with a mutual insurance company, in that they have both a membership interest (e.g., the right to vote and receive dividends) and contractual rights (i.e., the obligations of the insurance company under the policy) (see Dorrance v United States, 809 F3d 479, 482 [9th Cir 2015]; Bank of New York v Janowick, 470 F3d 264, 267 [6th Cir 2006], cert denied 552 US 825 [2007]; 17 Steven Plitt et al., Couch on Insurance 3d § 39:37 [1995]; see also Insurance Law § 1211 [a]).
By statute, a plan for conversion from a mutual insurance company to a stock insurance company
"shall . . . provide that each person who had a policy of insurance in effect at any time during the three year period immediately preceding [a specified date] shall be entitled to receive in exchange for such equitable share, without additional payment, consideration payable in voting common shares of the insurer or other consideration, or both. The equitable share of the policyholder in the mutual insurer shall be determined by the ratio which the net premiums (gross premiums less return premiums and dividend paid) such policyholder has properly and timely paid to the insurer on insurance policies in effect during [those] three years . . . bears to the total net premiums received by the mutual insurer from such eligible policyholders" (Insurance Law § 7307 [e] [3]).
The first quoted sentence of this statute explains who is entitled to receive the consideration, whereas the second quoted sentence explains how the consideration for each eligible person is to be calculated. Consideration is owed to anyone who had a policy of insurance in effect during the relevant time period. Under MLMIC's conversion plan, the consideration is payable to eligible policyholders or their designees. Designee is defined to mean someone who a policyholder specifically designated to receive the proceeds from demutualization; an ordinary designation as policy administrator does not convey the right to receive the cash consideration. The conversion plan defines member of the corporation as a policyholder, which is further defined as the person identified on the policy's declarations page as the insured. Plaintiff was the named insured on the relevant MLMIC policy. Hence, per the relevant statute and the conversion plan's definitions, plaintiff was entitled to the cash consideration (see Maple-Gate Anesthesiologists, P.C. v Nasrin, 182 AD3d 984, 985 [2020]).
Defendant's designation as policy administrator gave it no greater right to the cash consideration, and plaintiff did not explicitly assign that right to defendant and declined to do so (see Maple-Gate Anesthesiologists, P.C. v Nasrin, 63 Misc 3d 703, 709 [Sup Ct, Erie County 2019], affd 182 AD3d 984 [2020]). Although the conversion plan gives a policy administrator the right to object if it believes that it has a legal right to the cash consideration, the right to object carries no rights, in and of itself, to the consideration, and the objector must prove its claimed legal right thereto. Defendant has failed to provide any proof in that regard, as it has not demonstrated that plaintiff assigned it that right through a designation form or contractual arrangement.
Instead, defendant relies on its payment of premiums, as well as language in the conversion plan, DFS's decision approving the plan, and the statute stating that the amount of the cash consideration is based partly on the amount of premiums that "such policyholder has properly and timely paid to the insurer" (Insurance Law § 7307 [e] [3]).[FN2] However, as noted above, this language pertains to how the considerations are calculated, rather than to whom they must be paid. The reference to "policyholder" immediately preceding the word "paid" — the latter of which is the word that defendant focuses on — supports our interpretation (see Columbia Mem. Hosp. v Hinds, 65 Misc 3d 1205[A], 2019 NY Slip Op 51508[U], *4 [Sup Ct, Columbia County 2019]). Indeed, DFS's decision, in addressing similar comments raised by a different medical employer, concluded that an employer is not entitled to the consideration merely based on its payment of the premiums on an insurance policy, because the same provision refers to "policyholder," which may or may not be the person who paid the premium (see Maple-Gate Anesthesiologists, P.C. v Nasrin, 63 Misc 3d at 709 ["No distinction is made between a policyholder who pays the premium out of his (or her) own pocket versus a policyholder whose employer pays the premium as part of an employee compensation package. Insurance Law § 7307 does not confer an ownership interest . . . to anyone other than the policyholder"]). DFS explained in its decision that Insurance Law § 7307 defines the policyholders eligible to receive cash considerations but recognizes that they may have assigned such legal rights to others; that is why MLMIC's conversion plan includes a procedure for objections and holding considerations in escrow pending resolution of any disputes (see id. [noting that DFS's decision "tied eligibility for the objection and escrow process to when the policyholder had, in fact, assigned the right to cash consideration to another person or entity"]). According to DFS, the determination of who is entitled to the cash in these situations depends on the facts and circumstances of the parties' relationship and the applicable law. Defendant attempts to take this last portion of DFS's decision out of context, as if all determinations of the proper payee are based on the parties' relationship. However, that only applies if an objector raises a legitimate assertion that it is entitled to the consideration based on an assignment from the policyholder (see id.), which does not exist here. Accordingly, pursuant to the language of the statute, the conversion plan and DFS's decision, MLMIC should pay the cash consideration to plaintiff.
Having determined who is legally entitled to receive the cash consideration, we must now address defendant's alternate argument, namely, whether plaintiff would be unjustly enriched if she received the cash consideration as required by the statute and MLMIC's conversion plan (see Urgent Med. Care, PLLC v Amedure, 64 Misc 3d 1216[A], 2019 NY Slip Op 51188[U], *7 [Sup Ct, Greene County 2019] [noting that an employee who was a policyholder had "legal title to the proceeds" of MLMIC's demutualization, but requiring further proceedings based on possible unjust enrichment]). To recover under a theory of unjust enrichment, defendant must show (1) that plaintiff was enriched, (2) at defendant's expense, and (3) that it is against equity and good conscience to permit plaintiff to retain what is sought to be recovered by defendant (see Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 182 [2011]; New York State Workers' Compensation Bd. v Program Risk Mgt., Inc., 150 AD3d 1589, 1594 [2017]). "The essence of such a cause of action is that one party is in possession of money or property that rightly belongs to another" (Clifford R. Gray, Inc. v LeChase Constr. Servs., LLC, 31 AD3d 983, 988 [2006] [citations omitted]). "Generally, courts will look to see if a benefit has been conferred on the [plaintiff] under mistake of fact or law, if the benefit still remains with the [plaintiff], if there has been otherwise a change of position by the [plaintiff], and whether the [plaintiff's] conduct was tortious or fraudulent" (Paramount Film Distrib. Corp. v State of New York, 30 NY2d 415, 421 [1972] [citation omitted], cert denied 414 US 829 [1973]; accord Goel v Ramachandran, 111 AD3d 783, 791 [2013]; Clark v Daby, 300 AD2d 732, 732 [2002], lv denied 100 NY2d 503 [2003]). An allegation that the other party "received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment" (Goel v Ramachandran, 111 AD3d at 791 [internal quotation marks and citation omitted]).
Here, the parties' employment agreement provided that plaintiff would perform professional services for defendant. In exchange, defendant would pay her a stated salary and provide specified benefits including, as relevant here, obtaining and paying the premiums for professional liability insurance covering plaintiff. The record indicates that defendant purchased, controlled and maintained such a policy from MLMIC in plaintiff's favor. Defendant was the policy administrator, selected the coverage and terms, and was responsible for all financial aspects of the policy. Notably, defendant paid annual premiums of approximately $25,710; plaintiff paid nothing toward the premiums and those amounts were not counted as income to plaintiff. Defendant received from MLMIC dividends, premium reductions and the return of premiums when the policy was canceled upon plaintiff leaving defendant's employ, all without any objection by plaintiff.
Defendant contends that it would be unjust for plaintiff to receive the cash consideration because defendant paid all the premiums on the MLMIC policy upon which the consideration is based. Plaintiff argues that she was the policyholder and the employment agreement provided the insurance policy as an employment benefit, so she is entitled to the cash consideration for her membership in MLMIC based on that policy. Although "[a] party may not recover in unjust enrichment where the parties have entered into a contract that governs the subject matter" (Pappas v Tzolis, 20 NY3d 228, 234 [2012] [internal quotation marks, ellipsis and citation omitted]), the parties' employment agreement did not specifically address demutualization proceeds (see Sergeants Benevolent Assn. Annuity Fund v Renck, 19 AD3d 107, 112 [2005]). The lack of discussion in the contract on this topic is understandable, inasmuch as "no rights to demutualization proceeds arise until the demutualization is announced, absent a clear earlier agreement" (Bank of New York v Janowick, 470 F3d at 274), and MLMIC's demutualization was unexpected, as it was the first for a professional liability insurance company in this state.
Defendant asserts that the cash consideration would be a windfall to plaintiff. While true, the converse is also true; the consideration would be a windfall to defendant if defendant were to receive it. "Demutualization has been referred to as a 'windfall' in some cases because it is often unclear if parties knew the ownership stake even existed prior to the demutualization plan" (Urgent Med. Care, PLLC v Amedure, 64 Misc 3d 1216[A], 2019 NY Slip Op 51188[U] at *4 [citations omitted]; see Columbia Mem. Hosp. v Hind, 65 Misc 3d 1205[A], 2019 NY Slip Op 51508 at *5). The reality is that neither party here bargained for the demutualization proceeds. Moreover, neither party actually paid for them, because membership interests in a mutual insurance company are not paid for by policy premiums; such rights are "acquired . . . at no cost, but rather as an incident of the structure of mutual insurance policies," through operation of law and the company's charter and bylaws (Dorrance v United States, 809 F3d at 485; see Columbia Mem. Hosp. v Hinds, 65 Misc 3d 1205[A], 2019 NY Slip Op 51508 at *5).[FN3] Had defendant selected a different company to provide malpractice insurance to cover plaintiff, defendant would have met its contractual obligation to provide and pay for that insurance while plaintiff would have received the benefit of such coverage. Under those circumstances, neither party would receive a cash consideration. Thus, the demutualization proceeds were unexpected and will be a windfall to whichever party receives them. The fact that one party will receive these benefits does not mean that such party has unjustly enriched itself at the other's expense (see Goel v Ramachandran, 111 AD3d at 791), i.e., that it "is in possession of money or property that rightly belongs to another" (Clifford R. Gray, Inc. v LeChase Constr. Servs., LLC, 31 AD3d at 988).
Looking at the circumstances that the Court of Appeals listed for courts to consider when evaluating a claim of unjust enrichment (see Paramount Film Distrib. Corp. v State of New York, 30 NY2d at 421), the benefit of the cash consideration would be paid to plaintiff based on the statute and the conversion plan — a correct reading of the law, rather than a mistake. No factual mistake exists, other than the parties' mutual failure to consider the potential for demutualization when negotiating their employment agreement. Furthermore, both parties benefitted from defendant's fulfillment of its contractual obligation to provide malpractice insurance and pay for the premiums, inasmuch as the insurance provided coverage to protect the liability interests of plaintiff both individually and as an employee of defendant.[FN4] Neither party changed its position based on demutualization and plaintiff's conduct was neither tortious nor fraudulent. Hence, we conclude that defendant failed to meet its burden to establish its affirmative defense and counterclaim alleging unjust enrichment. Based on our analysis, we decline to follow Matter of Schaffer, Schonholz & Drossman, LLP v Title (171 AD3d 465 [2019], supra), which summarily held, without any analysis, that awarding an employee a cash consideration related to MLMIC's demutualization would constitute unjust enrichment where the employer had paid the policy premiums (id. at 465; compare Maple-Gate Anesthesiologists, P.C. v Nasrin, 182 AD3d at 985-986 [dismissing action by employer alleging unjust enrichment and conversion of demutualization proceeds by employees]). Accordingly, plaintiff was entitled to a declaratory judgment entitling her to receive the cash consideration from MLMIC's demutualization.
Garry, P.J., Egan Jr., Devine and Colangelo, JJ., concur.
ORDERED that the judgment is reversed, on the law, with costs, defendant's cross motion denied, plaintiff's motion granted, and it is declared that plaintiff is solely entitled to the $74,747.03 cash consideration from Medical Liability Mutual Insurance Company's demutualization, plus interest for the time the proceeds were in escrow, and defendant's claim thereto is invalid.



Footnotes

Footnote 1: Although defendant asserts that it employed plaintiff through February 2015, the precise dates of employment are unimportant for our purposes.

Footnote 2: Defendant also relies on a 2016 MLMIC newsletter article discussing the proposed demutualization. The article states that, "[i]n most cases, the person or entity that paid the premium will be considered as the owner of the eligible policy," who is entitled to the cash consideration. This informal opinion, provided two years before the conversion, should not be relied upon because it is contradicted by later, formal information provided in the conversion plan and other documents.

Footnote 3: "These rights are not transferable and upon termination of a policy, the policyholder receives nothing for any membership rights" (Dorrance v United States, 809 F3d at 485). These rights apparently have a monetary value only if the mutual insurance company demutualizes or liquidates while solvent (see id. at 486).

Footnote 4: Defendant received protection from the policy because, as plaintiff's employer, defendant may also be named in a malpractice complaint based on plaintiff's actions.