## Skonieczki v Park Ave. Assoc. In Radiology, P.C.

2024 NY Slip Op 31557(U)

May 2, 2024

Supreme Court, Broome County

Docket Number: Index No. EFCA2019000873

Judge: Eugene D. Faughnan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At a Motion Term of the Supreme Court of
the State of New York held in and for the
Sixth Judicial District at the Broome County
Courthouse, Binghamton, New York, on the
23rd day of February 2024.

PRESENT:    HON. EUGENE D. FAUGHNAN
            Justice Presiding

STATE OF NEW YORK
SUPREME COURT : COUNTY OF BROOME

---

BRENDAN D. SKONIECZKI, M.D.and
JAMES M. TERZIAN, M.D.,

                            Plaintiffs,          DECISION AND ORDER

                vs.

                                                 Index No. EFCA2019000873
PARK AVENUE ASSOCIATES IN
RADIOLOGY, P.C.,

                            Defendant.

---

APPEARANCES:


Counsel for Plaintiffs:          JUSTIN A. HELLER, ESQ.
                                 Nolan Heller Kauffman LLP
                                 80 State Street, 11th Floor
                                 Albany, NY 12207

Counsel for Defendant:           JEFFREY JAKETIC, ESQ.
                                 Hinman, Howard & Kattell, LLP
                                 80 Exchange Street
                                 Binghamton, NY 13902

## EUGENE D. FAUGHNAN, J.S.C.

Plaintiffs, Dr. Brendan D. Skonieczki and Dr. James M. Terzian, have made a motion seeking summary judgment on the second, seventh and eighth causes of action in their Complaint, as well as dismissal of the affirmative defenses and counterclaims interposed by Defendant Park Avenue Associates in Radiology ("Park Avenue") in its Answer. Defendant filed opposition to the motion and Plaintiff thereafter filed a Reply Memorandum. Oral argument was conducted on February 23, 2024 and counsel for both parties were present. After due deliberation, this constitutes the Court's Decision and Order with respect to the pending motion.[1]

## BACKGROUND FACTS

Park Avenue is a professional corporation and employs a number of physicians specializing in diagnostic radiology. Plaintiffs are medical doctors and former employees of Park Avenue.[2] Under the Plaintiffs' employment agreements, Defendant, among other things, was responsible for payment of Plaintiffs' malpractice insurance premiums. This was effectuated by an agreement executed by each Plaintiff appointing Defendant as Policy Administrator to administer the malpractice policies. Defendant had discretion to choose the carrier and selected Medical Liability Mutual Insurance Company ("MLMIC") to provide the coverage, obtaining policies for medical professionals in its practice group, including both Plaintiffs, for the relevant timeframes involved in this case. Group coverage is generally not permissible for medical malpractice, so each doctor has to be separately covered. *See,* Ins. Law § 3435 and 11 NYCRR part 153; *see also, Robert M. Schneider, M.D., P.C. v. Licciardi,* 65 Misc3d 254 (Sup. Ct., Greene County 2019). The declarations pages for the insurance were submitted and reveal that each doctor was listed as the insured on his individual policy, and that each policy listed Defendant as the Policy Administrator.

---

[1] All the papers filed in connection with the motion are included in the NYSCEF electronic case file and have been considered by the Court.

[2] Dr. Skonieczki was employed by Defendant from August 1, 2011 to December 31, 2014, and Dr. Terzian was employed from September 6, 2013 to November 26, 2017.

2

[* 2]

The Court begins by providing a brief historical review, to place the case in context. As it existed in 2016, MLMIC provided professional liability insurance coverage to medical professionals. The individual professional was always listed as the policyholder, regardless of whether the practice group served as Policy Administrator, even where the premiums were being paid by that Policy Administrator. "MLMIC was a mutual insurance company, which means that it was 'organized, maintained and operated for the benefit of its members'—and 'every policyholder was a member of' MLMIC." *Columbia Mem. Hosp. v. Hinds*, 38 NY3d 253, 266 (2022) (internal brackets omitted), *quoting* Insurance Law § 1211 [a]. In 2016, National Indemnity Company sought to acquire MLMIC, in exchange for $2.502 billion in cash consideration. In order to accomplish that, MLMIC would be demutualized, thereby changing MLMIC's structure from a private, member-owned company, to a publicly traded company that issues stock. Insurance Law § 7307 sets forth the requirements for the conversion from a mutual insurance company to a stock insurance company. The process requires the mutual insurance company to develop a plan for submission to the New York State Department of Financial Services ("DFS"). Significantly, the statute directs that "[t]he plan shall ... provide that each person who had a policy of insurance in effect at any time during the three year period immediately preceding the date of adoption of the resolution ... shall be entitled to receive in exchange for such equitable share, without additional payment, consideration payable in voting common shares of the insurer or other consideration, or both." Insurance Law § 7307 (e)(3). In order to comply with that mandate, MLMIC's plan provided that anyone who was a policyholder from July 2013 to July 2016 would receive payment in exchange for extinguishment of their membership interest. After a review and comment period, DFS approved the conversion, contingent on the approval of the MLMIC policyholders as of July 2016. The policyholders approved the plan and the conversion closed on October 1, 2018. Plaintiffs, as policyholders during the applicable time, were part of the group of members entitled to cash consideration.

The demutualization of MLMIC spawned much litigation over whether the employer was entitled to the proceeds from demutualization since it had paid the premiums, or if the employee/policyholder was entitled to receive the money.[3] That issue was conclusively resolved

---

[3] In fact, Park Avenue was involved in one of those earlier cases, claiming that it was entitled to the proceeds. The trial court disagreed and granted summary judgment to the doctor, which was affirmed by the Third Department

by the Court of Appeals in *Columbia Mem. Hosp. v. Hinds*, 38 NY3d 253, which involved 8 consolidated appeals. In *Hinds*, it was noted that it was common practice for employee doctors to designate the employer as the Policy administrator to "handle[] the administrative logistics of the policy, including receiving dividends and paying policy premiums." *Id.* at 268. That is the situation presented in this case. The employers and/or Policy Administrators in *Hinds* asserted an entitlement to the demutualization proceeds, but that argument was rejected. The Court of Appeals concluded that "absent contrary terms in the contract of employment, insurance policy, or separate agreement, the policyholder is entitled to the proceeds from the demutualization." *Id.* at 277. Thus, the individual doctors/policyholders of MLMIC were, and are, entitled to their share of the proceeds, unless there is some contrary agreement. The Court of Appeals did not address the contours of any such "contrary agreement" and that is the issue raised on this motion.

This case involves the exception referred to in *Hinds*- an agreement that purportedly served to relinquish the rights to demutualization proceeds. Here, Park Avenue claims that both Plaintiffs signed consents to turn the proceeds over to Park Avenue. The evidence includes consents signed by both Plaintiffs which were provided to them by Park Avenue (but distributed by MLMIC). The consents designated the "policy administrator [Defendant] as the agent to receive any distribution that may be allocated to the [policyholder] ... upon the consummation of the announced [demutualization]." Based on the consents, Defendant claims that it is entitled to the proceeds, notwithstanding *Hinds*. Since Park Avenue paid all the premiums, it contends that it was reasonable for Plaintiff to cede the money from the demutualization process to Defendant.

Plaintiffs assert that they were not provided with MLMIC informational statements about the conversion and their rights with respect to that. Instead, the informational statements were sent to Park Avenue, but not forwarded to Plaintiffs. Thereafter, a representative from Park Avenue contacted both Plaintiffs and arranged for them to sign documents related to the conversion. Plaintiffs contend that they were not advised of the contents of those documents, and that they were told that the documents they were signing were just a housekeeping detail. They claim that Defendant failed to disclose relevant information with respect to the demutualization and the consents, and that such actions/inactions constitute a breach of fiduciary duty. The conversion and "money had and received" causes of action are premised upon the

in *Park Ave. Assoc. in Radiology, P.C. v. Nicholson*, 200 AD3d 1436 (3rd Dept. 2021), *aff'd* 38 NY3d 1127 (2022). The *Nicholson* case was different in that the physician had not signed a consent.

4

argument that Defendant improperly withheld money that belonged to Plaintiffs as policyholders, and/or that the consents were invalid or otherwise did not convey ownership rights to the Defendant. Plaintiffs have sued to recover their share of the demutualization proceeds. As *Hinds* makes clear, the distribution would have belonged to the Plaintiffs as policyholders unless they signed valid agreements to alter that.

Plaintiffs' Complaint sets forth eight causes of action. On this motion, Plaintiffs seek summary judgment on three of those causes of action: conversion, money had and received, and breach of fiduciary duty.

## LEGAL DISCUSSION AND ANALYSIS

When seeking summary judgment, "the movant must establish its prima facie entitlement to judgment as a matter of law by presenting competent evidence that demonstrates the absence of any material issue of fact." *Lacasse v. Sorbello*, 121 AD3d 1241, 1241 (3rd Dept 2014) *citing Alvarez v. Prospect Hosp.*, 68 NY2d 320, 324 (1986) and *Winegrad v. New York Univ. Med. Ctr.*, 64 NY2d 851, 853 (1985) (other citation omitted); *see Amedure v. Standard Furniture Co.*, 125 AD2d 170 (3rd Dept. 1987); *Bulger v. Tri-Town Agency, Inc.*, 148 AD2d 44 (3rd Dept. 1989), *app dismissed* 75 NY2d 808 (1990). Such evidence must be tendered in admissible form. *Zuckerman v. City of New York*, 49 NY2d 557 (1980); *Friends of Animals, Inc. v. Associated Fur Mfrs.*, 46 NY2d 1065, 1067-1068 (1979). Once this obligation is met, the burden shifts to the respondent to establish that a material issue of fact exists. *Dugan v. Sprung*, 280 AD2d 736 (3rd Dept. 2001); *Sheppard-Mobley v. King*, 10 AD3d 70, 74 (2nd Dept. 2004) *aff'd as mod.* 4 NY3d 627 (2005); *Alvarez v. Prospect Hosp.*, 68 NY2d 320, 324; *Winegrad v. N.Y. Univ. Med. Ctr.*, 64 NY2d 851, 853. "When faced with a motion for summary judgment, a court's task is issue finding rather than issue determination *(see, Sillman v. Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957]) and it must view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of every reasonable inference and ascertaining whether there exists any triable issue of fact." *Boston v. Dunham*, 274 AD2d 708, 709 (3rd Dept. 2000) (citation omitted); *American Food & Vending Corp. v. Amazon.com, Inc.*, 214 AD3d 1153 (3rd Dept. 2023). The motion "should be denied if any significant doubt exists as to whether a material factual issue is present or even if it is arguable that such an issue exists." *Haner v. De*

5

*Vito*, 152 AD2d 896, 896 (3rd Dept. 1989) (citation omitted); *Lacasse v. Sorbello*, 121 AD3d 1241; *Asabor v. Archdiocese of N.Y.*, 102 AD3d 524 (1st Dept. 2013). It "is not the function of a court deciding a summary judgment motion to make credibility determinations or findings of fact." *Vega v. Restani Constr. Corp.*, 18 NY3d 499, 505 (2012) (citation omitted); *Black v. Kohl's Dept. Stores, Inc.*, 80 AD3d 958 (3rd Dept. 2011).

The Court will now apply those well-established summary judgment rules to the specific facts and causes of action raised in this motion.

### 1. Conversion

"Conversion is the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 NY2d 36, 44 (1995), *quoting Employers' Fire Ins. Co. v. Cotten*, 245 NY 102, 105 (1927); *see, Colavito v. New York Organ Donor Network, Inc.*, 8 NY3d 43 (2006); *Ciprich v. Atwood*, 163 AD3d 1332 (3rd Dept. 2018); *Torrance Constr., Inc. v. Jaques*, 127 AD3d 1261 (3rd Dept. 2015). "[W]here possession of property is initially lawful, conversion occurs when there is a refusal to return the property upon demand." *Salatino v. Salatino*, 64 AD3d 923, 925 (3rd Dept. 2009) *lv. denied* 13 NY3d 710 (2009); *Hoffman v. Unterberg*, 9 AD3d 386 (2nd Dept. 2004). Thus, conversion requires a plaintiff to show a possessory interest and defendant's interference with plaintiff's rights.

Caselaw has already established that the Policy Administrator form did not give Defendant the right to the proceeds. *See, e.g. Schoch v. Lake Champlain OB-GYN, P.C.*, 184 AD3d 338 (3rd Dept. 2020), *aff'd by Columbia Mem. Hosp. v. Hinds*, 38 NY3d 253. Instead, Defendant relies on the July 2018 consents signed by both Plaintiffs to support its position that the rights to the proceeds were signed over to Defendant. However, the Court concludes that Plaintiffs' possessory interests in the proceeds were not transferred to Defendant by the signed consents.

Setting aside for the moment the contentions that the consents were obtained improperly and are invalid, the Court will analyze the substance of the consents. By letter dated June 29, 2018, MLMIC provided information to policyholders and/or Policy Administrators about the demutualization process and recognized "that the current policy administrator designations on

6

file with MLMIC do not extend to the distribution of the cash amounts allocated to eligible policyholders", and that a specific appointment for that purpose would be necessary, if desired. A consent form was attached and stated that the policyholder "hereby designates the undersigned's policy administrator as agent to receive any distribution that may be allocated to the undersigned ..." Defendants believe that the consents themselves created its entitlement to the proceeds.

The consent form signed by each Plaintiff is a contract. "Construction of an unambiguous contract is a matter of law, and the intention of the parties may be gathered from the four corners of the instrument and should be enforced according to its terms." *Beal Sav. Bank v. Sommer*, 8 NY3d 318, 324 (2007) (citations omitted); *see, County of Saratoga v. Delaware Eng'g., D.P.C.*, 189 AD3d 1926 (3rd Dept. 2020). "Consequently, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *MHR Capital Partners LP v. Presstek, Inc.*, 12 NY3d 640, 645 (2009) (internal quotation marks and citation omitted); *Maldonado v. DiBre*, 140 AD3d 1501, 1506 (3rd Dept. 2016). "[T]he court should construe the agreements so as to give full meaning and effect to the material provisions." *Excess Ins. Co. v. Factory Mut. Ins. Co.*, 3 NY3d 577, 582 (2004). The Court must be cautious to give import to all the terms of a contract, and "the words and phrases employed must be given their plain meaning." *Cerand v. Burstein*, 72 AD3d 1262, 265 (3rd Dept. 2010) (citations omitted).

The Court must consider what the contract says, and what it does not say. First, it does not say that Defendant is entitled to keep the proceeds. By its terms, the consent simply allows the policy administrator to <u>receive</u> the distribution, but that does not equate to an ownership interest. Although Defendant asserts that the consent forms constituted a relinquishment of Plaintiffs' right to the demutualization proceeds, the language does not support that conclusion. If transfer of the right to the proceeds was intended, the consent could have been drafted to clearly state that the policy administrator would be entitled to receive <u>and keep</u> the distribution, or some other language clearly showing the transfer of ownership rights. The Court does not believe that the words "receive any distribution" are ambiguous, and that those words are not sufficient to establish that Defendant became entitled to the proceeds. Rather, it means what it says- that the Policy Administrator could receive the proceeds; i.e. the funds could be sent to the Policy Administrator, who could receive them on behalf of the policyholder. The Court finds

7

that the consents as written did not explicitly assign the rights to the cash consideration. They simply served as the vehicle by which MLMIC was authorized to send the proceeds to a Policy Administrator to be handled between the medical professional and the Policy Administrator.

There is admittedly some language in the *Shoch* case that supports Defendant's position. In that case, the Third Department wrote that the consent form "distributed by MLMIC to policyholders … would designate someone else … to receive [his or] her share of the cash consideration." *Schoch v. Lake Champlain OB-GYN, P.C.*, 184 AD3d at 340. However, on closer inspection, the *Schoch* case does not dictate any contrary result. The quoted language was not the holding, but was merely *dictum*. In *Schoch*, the Third Department observed that plaintiff therein did not sign the consent form. Since Schoch did not sign the consent, the scope of the consent was not actually decided by the Third Department in that case. Instead, the case was decided on the issue of who was legally entitled to the cash distribution-the policy holder or the Policy Administrator which paid the insurance premium. That was also the issue resolved in *Hinds*, which also did not address whether the MLMIC consent forms effectively assigned the proceeds to a policy administrator.

The usage of the term "as agent" in the consent is also significant. In this context, those are words of limitation and show that the designation was subject to being Plaintiffs' agent, not a transfer of ownership. Some rights were being retained by Plaintiffs. "The basic tenet of a principal-agent relationship is that the principal retains control over the conduct of the agent with respect to matters entrusted to the agent, and the agent acts in accordance with the direction and control of the principal." *Race v. Goldstar Jewellery, LLC*, 84 AD3d 1342, 1342-1343 (2nd Dept. 2011), *quoting Williams Stevens, Inc. v. Kings Vil. Corp.*, 234 AD2d 287, 288 (2nd Dept. 1996). The inclusion of the words "as agent" in the consents must be construed to mean that Plaintiffs retained control and the Defendant, as agent, could only act with the direction provided by Plaintiffs. The only direction here was to receive the money (and presumably hold it until requested by Plaintiffs). The consent does not expressly contain language assigning the demutualization proceeds and it would be improper for this Court to insert that language into the consent. *Park Ave. Assoc. in Radiology, P.C. v. Nicholson*, 200 AD3d 1436.

A different situation would be presented if the consents omitted the words "as agent". Then the contract would read that the policyholder designated the policy administrator to receive any distribution that may be allocated to the policyholder. In that case, Defendant might have a

8

stronger case for the transfer of rights to the proceeds, thereby creating a question of fact. But the inclusion of the words "as agent" can only be read as the Plaintiffs retaining their ownership rights.

Further support for the Court's conclusion is also found in the notice sent by MLMIC with the consent form (which notice the Plaintiffs deny even receiving). That notice stated that "If there is a preference to have such distributions paid directly to a policy administrator as a matter of convenience or <u>as a result of contractual obligations between you and your policy administrator</u>, please execute the consent form…" (emphasis added). The first part of that sentence recognizes that the consent can be used to simply have the money sent to the policy administrator, rather than the policyholder, just for convenience. That is the interpretation being accepted by this Court. The second part of the sentence refers to a contractual obligation. If there was a "contractual obligation" between the parties related to the proceeds, that obligation would have had to be outside the context of the consent form. The consent states that if there is such a contractual obligation (meaning it was already in existence), then by signing the consent, the policyholder was agreeing that the proceeds could be sent to the Policy Administrator. It does not say that the consent itself transfers the rights to the proceeds. Moreover, the notice acknowledged that the Policy Administrator designations which it already had on file were not sufficient to transfer cash proceeds to the Policy Administrators. Thus, if the parties had a separate agreement to turn over the demutualization proceeds, then the consent could be used to send the money to the Policy Administrator. *See, e.g. Riggs v. Brooklyn Hosp. Ctr.*, 207 AD3d 405 (1st Dept. 2022). In *Riggs*, the Plaintiff doctor left the hospital's employment in 2015 and signed an agreement in August 2018 (different than the consent form) which specifically provided that in consideration of the premium payments made by the hospital, the Plaintiff policyholder assigned the demutualization proceeds to the hospital. The assignment stated that "the portion of Cash Consideration allocable to the Eligible Policyholder and assigned hereunder shall be paid in full directly to Assignee by MLMIC." In *Riggs*, the trial court concluded that the terms of the agreement showed that Plaintiff willingly gave up his right to the money, and assigned it to the hospital. That is the type of separate agreement contemplated by *Hinds*. The consent form signed by Plaintiffs in this case lacks the <u>assignment</u> of the funds. As the Court reads the consents, the clear purpose of the consent was merely to provide authorization to MLMIC to send the funds to the Policy Administrator, subject to whatever agreement or

9

arrangement that existed between the medical professional and policy administrator. That interpretation is consistent with the consent's usage of the term "as agent" for the policyholder.

The demutualization of MLMIC has resulted in many dozens of lawsuits, and many have involved the same signed consent used in this case. However, the parties have not cited any case where the court has specifically addressed the scope and meaning of the phrase "as agent to receive any distribution that may be allocated to the [policyholder]", nor has this Court's research uncovered any cases. That appears to be due to the fact that the cases have been decided on alternate grounds, some of which will be discussed below. Nonetheless, the contractual language and interpretation seems to this Court to be the most direct and appropriate consideration. With respect to that factor, the Court concludes that the signed consents did not convey a possessory interest to Defendant, or assign Plaintiffs' rights to the proceeds. Accordingly, the consents were not the type of separate agreement referred to in *Hinds* to overcome Plaintiffs' entitlement to the funds. Since the consent forms did not convey the ownership rights, then upon Plaintiffs' demand for the funds, Defendant's refusal to release the funds constitutes a conversion. *See, Cuprys v. Volpicelli*, 170 AD3d 1477 (3rd Dept. 2019); *J Squared Software, LLC v. Bernette Knitware Corp.*, 48 AD3d 351 (1st Dept. 2008). Under agency law, where an agent is in possession of money belonging to the principal, the agent must turn over the money, at the latest, when the principal makes demand for it. *See Gleason v. Ritchie*, 267 AD 447 (4th Dept. 1944). There is no dispute that Plaintiffs have demanded payment but have not received the money.

a. Voluntary Payment defense

Defendant argues that the doctrine of voluntary payment bars Plaintiffs' recovery. The voluntary payment "doctrine 'bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law.'" *Cascade Bldrs. Corp. v. Rugar*, 193 AD3d 1283, 1286-1287 (3rd Dept. 2021), *quoting Dillon v. U-A Columbia Cablevision of Westchester*, 100 NY2d 525, 526 (2003). The burden is on the party upon whom the demand for payment is made to protest the payment and litigate it "before, rather than after, payment is made." *Utica Mut. Ins. Co. v. American Re-Insurance Co.*, 218 AD3d 1283, 1285 (4th Dept. 2023) (quotation marks and citations omitted).

10

[* 10]

The voluntary payment doctrine does not apply in this situation. Here, payment was not made by Plaintiffs to Defendant, but rather was made by MLMIC to Defendant. "The doctrine of voluntary payment is applicable only where payment is made by the debtor directly or by the debtor's personally authorized agent and does not apply where the creditor receives from third persons moneys belonging to the debtor." 82 NY Jur Payment and Tender § 83. Since MLMIC, not Plaintiffs, made the payment, this situation does not fall within the voluntary payment doctrine. An exception could exist if MLMIC was acting as Plaintiffs' authorized agent with Plaintiffs' express direction and with Plaintiffs' full knowledge of their entitlement to the proceeds. *See, e.g. Guaranty Trust Co. v. New York*, 108 AD 192 (1st Dept. 1905). Where a plaintiff who is entitled to money authorizes a third person to make those payments to another person/entity, then it is the equivalent of the payment being made directly by the plaintiff. Even if the consents here could be interpreted as authorizing MLMIC to send the funds to Defendant, it is still not a voluntary payment because: 1) it did not specifically assign Plaintiffs' rights and 2) the Plaintiffs did not have the requisite knowledge of their rights. Defendant concedes that the law was not clear who was entitled to the demutualization proceeds until the *Hinds* decision in 2022. Therefore, it cannot be said that Plaintiffs had full knowledge that they were entitled to the proceeds when they signed these consents in 2018. Thus, neither Plaintiffs nor their agents agreed to have the proceeds paid over to Defendant in derogation of Plaintiffs' rights. Accordingly, Defendant has failed to establish a voluntary payment that would overcome Plaintiffs' right to the proceeds.

Plaintiffs were entitled to the proceeds and the consents did not convey ownership rights to the proceeds. Further, the consents did not constitute a voluntary payment because Plaintiffs were not aware of their entitlement. Lastly, Defendant's failure to release the monies to Plaintiffs despite a demand therefore constitutes conversion.

2. Money had and received

The Court next turns to Plaintiffs' claim of "money had and received." The required elements are "that the defendant received money belonging to the plaintiff and benefitted from that money, and that equity and good conscience will not permit the defendant to keep the money." *Torrance Constr., Inc. v. Jaques*, 127 AD3d at 1264 (citations omitted); *In re Estate of*

11

*Witbeck*, 245 AD2d 848 (3rd Dept. 1997); *see, DeGroat v. Whalen*, 201 AD3d 875 (2nd Dept. 2022). It is based on quasi-contract or contract implied-in-law (*Goel v. Ramachandran*, 111 AD3d 783 [2nd Dept. 2013]), and utilizes equitable principles to restore the parties to their rightful positions. It is an action at law but involves considerations of right and justice. *In re Estate of Witbeck*, 245 AD2d 848.

To make out a prima facie case, the Plaintiffs must initially show that "defendant received sums of money to which the plaintiff[s are] entitled." *DeGroat v. Whalen*, 201 AD3d at 877 (citation omitted); *see, Litvinoff v. Wright*, 150 AD3d 714 (2nd Dept. 2017); *In re Estate of Witbeck, supra*. If there is a triable issue of fact regarding the entitlement to the funds, then summary judgment could not be granted. As discussed above, the proceeds from the demutualization rightfully belonged to the Plaintiffs per *Hinds*, and the consent which Plaintiffs signed (even if valid; i.e. not procured through a breach of of fiduciary duty) did not transfer their ownership rights. Next, the proceeds were sent to Defendant and Defendant clearly has benefitted from receipt of those funds. Since the consents did not convey Plaintiffs' ownership, it would be inequitable to allow Defendant to retrain the money. Accordingly, Plaintiffs made a prima facie case for money had and received. Other than the argument of voluntary payment, which has been rejected by the Court, Defendant has not raised a triable issue of fact. Defendant has failed to turn over the proceeds despite demand from Plaintiffs and such failure supports Plaintiffs' claim for money had and received.

3. Breach of fiduciary duty

The Court's determinations with respect to the claims for conversion and "money had and received" are dispositive with respect to the motion for summary judgment, but the Court will also address the claim for breach of fiduciary duty. Plaintiffs argue that the consent forms are void because, among other things, they were procured by Defendant without Defendant providing Plaintiffs with all the material facts about the MLMIC demutualization, and because the competing interests in the proceeds created a conflict of interest which Defendant failed to disclose to Plaintiffs.

"A claim for breach of fiduciary duty 'requires the existence of a fiduciary relationship, misconduct by the defendant and damages directly caused by the misconduct.'" *Darwish Auto*

12

*Group, LLC v. TD Bank, N.A.*, 224 AD3d 1115, 1121 (internal bracket omitted), *quoting Matter of Testani v. Russell & Russell, LLC*, 204 AD3d 1260, 1262 (3rd Dept. 2022); *see Delibasic v. Manojlovic*, 174 AD3d 1096 (3rd Dept. 2019). "A fiduciary relationship "exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *EBC I, Inc. v. Goldman Sachs & Co.*, 5 NY3d 11, 19, *quoting* Restatement [Second] of Torts § 874, Comment a. The existence and scope of a duty is a legal question. *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 NY2d 280 (2001). "Generally, 'an insurance company does not owe its policyholder a common-law fiduciary duty except when it is called upon to defend its insured.'" *Neurological Surgery, P.C. v. MLMIC Ins. Co.*, 208 AD3d 1238, 1240 (2nd Dept. 2022) (internal quotation mark and end citation omitted).

The Policy Administrator form, prepared by MLMIC, and signed by each Plaintiff long before the demutualization, stated that the "Policy Administrator is the agent of all insureds ... for the paying of Premium, requesting changes in the policy ... and for receiving dividends and any return Premiums when due." Plaintiffs argue that Park Avenue was their agent, and therefore, there was a fiduciary relationship. Defendant argues that it was only agent for the specified activities, not for demutualization proceeds. Thus, Defendant argues that it could not be responsible for this claim of breach of fiduciary duty.

As noted above, the Policy Administrator form signed by Plaintiffs specifically stated that by signing the form, a Policy Administrator was being designated and that the Policy Administrator was the agent of all the insureds (for payment of premiums, requesting changes in the policy etc.). Although the designation of a Policy Administrator did not give that policy administrator the right to the cash consideration, Plaintiffs argue that a fiduciary duty existed between each of them and Defendant by virtue of the Policy Administrator form. In *Cordaro v. Advantage Care Physicians*, P.C., the First Department held that "[t]he policy administrator forms, which say defendant is plaintiff's agent, establish a fiduciary relationship between the parties." *Cordaro*, 208 AD3d at 1091. The Policy Administrator form signed by Plaintiffs in this case is identical to the form signed by Plaintiffs in *Cordaro*. Accordingly, on the precise issue of whether the Policy Administrator form created a fiduciary relationship, such question was resolved in *Cordaro*. Although the issue arose on a motion to dismiss in *Cordaro*, the

13

holding of the First Department was that a fiduciary relationship existed, and that the cause of action for breach of fiduciary duty should not be dismissed.

The First Department decision in *Cordaro* is binding on this Court. "Supreme Court is bound by the doctrine of stare decisis to apply precedent established in another Department, either until a contrary rule is established by the Appellate Division in its own Department or by the Court of Appeals." *D'Alessandro v. Carro*, 123 AD3d 1, 6 (1st Dept. 2014); *Shoback v. Broome Obstetrics & Gynecology, P.C.*, 184 AD3d 1000 (3rd Dept. 2020). There is no other relevant precedent on this issue from the Third Department or the Court of Appeals.[4] Thus, Plaintiffs have established the first factor for the breach of fiduciary duty claim-that a fiduciary relationship existed.

Plaintiffs allege that Defendant breached the fiduciary duty by obtaining their signatures on the consent forms without providing Plaintiffs with all the material facts concerning the demutualization, and by misrepresenting the nature of the cash consideration. In support of that position, Plaintiffs submitted a joint affidavit of the Plaintiffs alleging that Defendant received the informational packet from MLMIC but failed to provide that information to the Plaintiffs, including the option to decline to appoint Defendant to receive the cash consideration. Plaintiffs also allege that Defendant induced them to sign the papers by assuring them that the papers were mere "housekeeping" details. It should be recalled that both Plaintiffs were no longer employed by Defendant at that point and did not have information other than what was being sent by Defendant. Plaintiffs also allege that the proceeds were improperly characterized as a "refund of premiums" rather than a cash consideration. Presumably, a refund of premiums would come under the terms in the Policy Administrator form which allowed Defendant to handle the payment of premiums and keep any premium refunds. Had Plaintiffs been properly informed that the proceeds were cash consideration for the extinguishment of their membership rights,

---

[4] Although not cited by either party, *Neurological Surgery, P.C. v. MLMIC Ins. Co.*, 208 AD3d 1238 merits a brief review. In that case, decided 6 days before *Cordaro*, the Second Department concluded that there was no fiduciary relationship between a surgical group (comprised of its individual professionals) and MLMIC. The Court relied upon the common-law rule that an insurance company does not generally owe a duty to its policyholders. In granting MLMIC's motion to dismiss under CPLR 3211 (a), the court noted that there were no allegations in the complaint that would give rise to a fiduciary or special relationship. Significantly, there was no discussion about the Policy Administrator form and complaint in the case did not refer to the Policy Administrator form. That case involved the policyholder(s) and the insurer, and is distinguishable from the instant case involving the policyholder(s) and the employer/Policy Administrator.

14

[* 14]

then they could have made informed decisions as to whether to sign those rights over to Defendant.

In opposition, Defendant submitted an affidavit of Haley Maxon, who is the Defendant's administrator. She stated that she did have discussions with the Plaintiffs about the nature of the proceeds, and explained it to the best of her understanding at that time. She did not appreciate the distinction between a refund of premiums and demutualization proceeds, and asserted that she did not intend to mislead the Plaintiffs. She was not aware that there was even any question as to who was entitled to the proceeds, and thought it was the practice group, particularly since the practice group had made all the payments. She also averred that she did provide the MLMIC informational documents to the Plaintiffs (by email to Dr. Skonieczki and by mail to Dr. Terzian).

There is conflicting evidence regarding the breach of fiduciary duty which precludes summary judgment on that cause of action. *See, Delibasic v. Manojlovic*, 174 AD3d 1096. That simply means that the Court cannot conclude that the consents are invalid. However, based on the conclusions with respect to the claims for conversion and "money had and received", Plaintiffs are still entitled to summary judgment.


4. Pre-Judgment Interest


Plaintiffs also seek pre-judgment interest on the basis that Defendant improperly withheld Plaintiffs' money and had the benefit of it to the detriment of Plaintiffs. Pursuant to CPLR § 5001 (a), "[i]nterest shall be recovered upon a sum awarded because of ... an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion." Conversion is a legal claim and could entitle the Plaintiffs to prejudgment interest. *See, Hunt v. Hunt*, 13 AD3d 1041 (3rd Dept. 2004); *see also, Zimmerman v. Tarshis*, 300 AD2d 477 (2nd Dept. 2002); *Eighteen Holding Corp. v. Drizin*, 268 AD2d 371 (1st Dept. 2000).

Plaintiffs were deprived of the usage of the distribution proceeds and pre-judgment at the statutory rate of nine percent is proper under CPLR 5001. Such interest shall be awarded from February 5, 2019, which is the date of Plaintiffs' demand letter. Although Plaintiffs'

15

Memorandum of Law states at p. 15 that the Demand Letter was dated December 10, 2018, that does not appear to be accurate. The Memorandum of Law cites to the Plaintiffs' Joint Affidavit at ¶22, and the attorney affirmation, Exhibit A. The Joint affidavit actually states that demand letter was dated February 5, 2019. That affidavit in turn, refers to Exhibit D of the attorney affirmation. In fact, the demand letter is located at Exhibit D and is dated February 5, 2019. The Court will use that date for the interest calculation.

### 5. Defendant's request for discovery

Defendant argues that summary judgment should be denied because no discovery has taken place. It seeks the opportunity to conduct discovery on issues such as communications between the parties prior to the execution of the consent forms and the Plaintiffs' understanding of the consent forms.

The Court's determination is based upon undisputed facts and documentary evidence, particularly the signed consents, so discovery is not necessary. *Park Ave. Assoc. in Radiology, P.C. v. Nicholson*, 200 AD3d 1436. Moreover, this case was commenced in April 2019 and Defendant answered in May 2019, but apparently has not sought discovery. Summary judgment should not be delayed under these circumstances.

### 6. Defendant's counterclaims and affirmative defenses

Defendant set forth 5 affirmative defenses (failure to state a cause of action; release; waiver; accord and satisfaction, and estoppel) and 2 counterclaims (breach of contract, implied in fact contract, duty of fair dealing, and unjust enrichment). "A party may move for judgment dismissing one or more defenses, on the ground that a defense is not stated or has no merit." CPLR 3211 (b). "Where there are material questions of facts, affirmative defenses should not be dismissed on the merits." *Wright v. N.Y.*, 192 AD3d 1277, 1279 (3rd Dept. 2021) (citations omitted). "However, where affirmative defenses 'merely plead conclusions of law without any supporting facts,' the affirmative defenses should be dismissed pursuant to CPLR 3211 (b)." *Bank of Am., N.A. v. 414 Midland Ave. Assoc., LLC*, 78 AD3d 746, 750 (2nd Dept. 2010), *quoting Fireman's Fund Ins. Co. v. Farrell*, 57 AD3d 721, 723 (2nd Dept. 2008).

16

[* 16]

In light of the Court's determination that Plaintiffs are entitled to summary judgment on the claim for conversion and "money had and received", it necessarily follows that the affirmative defense of failure to state a cause of action must be dismissed. *See, Agility Funding, LLC v. Wholey*, 119 AD3d 1168 (3rd Dept. 2014). The affirmative defenses of release, and waiver, are based on the theory that Plaintiffs gave up their rights to the proceeds when they signed the consents. That argument was rejected by the Court with the findings above, and so those affirmative defenses must fail. Defendant has not identified any support for the affirmative defenses of accord and satisfaction or for estoppel, nor has it made any arguments in opposition. To that extent, those affirmative defenses are waived. However, even if they were not waived, they would still be dismissed. Accord and satisfaction involves claims between parties that are resolved through a new contract, which is not present here. The issue here is the validity and scope of the signed consents. Defendant has not submitted any other evidence to support that defense. With respect to estoppel, the Defendant has not identified the type of estoppel or the evidence that would support such an affirmative defense. As such, it is conclusory and subject to dismissal. If the estoppel argument is also premised on the consents, the Court has already concluded that the consents do not relinquish Plaintiffs' right to the proceeds. Therefore, they cannot be estopped from making that claim.

Defendants also raised 2 counterclaims and they are both based on the position that Defendant is entitled to the demutualization proceeds and/or that it would be inequitable to allow Plaintiffs to receive the proceeds when they did not make any of the premium payments. That argument is contrary to this Court's determination and the controlling case law. Unjust enrichment was expressly rejected by the Third Department in *Nicholson* and *Schoch*.

## CONCLUSION

Based on the foregoing, the Court concludes that Plaintiffs have established their entitlement to summary judgment with respect to their share of the demutualization proceeds at issue herein. Under the *Hinds* case, the policyholder is entitled to that money absent a contrary agreement. The consents relied upon by Defendant do not establish an assignment by Plaintiffs to Defendant for the money based upon the plain language of the consents. Accordingly, it is hereby

17

ORDERED, that Plaintiffs motion for summary judgment on the claims for conversion and money had and received is GRANTED; the motion for summary judgment on breach of fiduciary duty is DENIED, and it is further

ORDERED, that Plaintiffs' motion to dismiss Defendant's affirmative defenses and counterclaims is GRANTED, and it is further

ORDERED, that Plaintiffs are entitled to statutory pre-judgment interest from February 5, 2019.

THIS CONSTITUTES THE DECISION AND ORDER OF THIS COURT.

Dated:      May 2 , 2024
            Binghamton, New York

_____
HON. EUGENE D. FAUGHNAN
Supreme Court Justice

18

[* 18]



# NYSCEF Confirmation Notice
## Broome County Supreme Court

The NYSCEF website has received an electronic filing on 05/02/2024 01:33 PM. Please keep this notice as a confirmation of this filing.

### EFCA2019000873
### BRENDAN D. SKONIECZKI M.D. et al v. PARK AVENUE ASSOCIATES IN RADIOLOGY, P.C.
### Assigned Judge: Eugene D. Faughnan

## Documents Received on   05/02/2024 01:33 PM

| Doc # | Document Type |
|---|---|
| 36 | DECISION + ORDER ON MOTION, Motion #1 |

## Filing User

Filed by court user.

## E-mail Notifications

An email regarding this filing has been sent to the following on 05/02/2024 01:33 PM:

**JAMES S. GLEASON** - jgleason@hhk.com
**RONALD L. GREENE** - rgreene@hhk.com
**JUSTIN A. HELLER** - jheller@nhkllp.com
**JEFFREY A. JAKETIC** - jjaketic@hhk.com

**Joseph A. Mihalko, Broome County Clerk** - clerkinfo@co.broome.ny.us
Phone: Phone: 607.778.2255     Fax: Fax: 607.778.2243     Website: http://www.gobroomecounty.com/clerk

**NYSCEF Resource Center, nyscef@nycourts.gov**
Phone: (646) 386-3033 | Fax: (212) 401-9146 | Website: www.nycourts.gov/efile

Page 1 of 1